[Nos. 15184, 15185.   In Bank. — October 3, 1892.]

THE PEOPLE EX REL. SNOWBALL, PETITIONER, *v.*
R. W. PENDEGAST, COUNTY CLERK OF YOLO
COUNTY, RESPONDENT, AND THE PEOPLE EX REL.
SNOWBALL, PETITIONER, *v.* H. H. MARKHAM,
GOVERNOR OF CALIFORNIA, RESPONDENT.

CONSTITUTIONAL LAW — TERM OF OFFICE OF SENATORS — REDIVISION OF
DISTRICTS — UNEQUAL REPRESENTATION. — Under the constitution and
laws of this state, the senators elected in the year 1890 from the even-
numbered senatorial districts continue to hold office for the full consti-
tutional term of four years, and the act redividing the state into new
senatorial districts, approved March 11, 1891, purporting to continue
the senators in even-numbered districts in office for the full term of four
years, is not in conflict with the constitution, notwithstanding some of
the counties in the newly formed districts will have double representa-
tion in the senate, and others will be deprived of their fair and equal
representation.

ID. — CONSTRUCTION OF CONSTITUTION — INCONVENIENCES OF APPLICATION.
— The courts, in construing the constitution, are bound to suppose that
any inconveniences involved in the application of its provisions, accord-
ing to their plain terms and import, were considered in its formation,
and accepted as less intolerable than those avoided, or as compensated
by countervailing advantages.

APPLICATIONS to the Supreme Court for writs of man-
date.   The facts are stated in the opinion of the court.

*G. W. McEnerney,* for Petitioner.

*Attorney-General W. H. H. Hart,* for Respondents.

BEATTY, C. J. — These are original applications for
writs of mandate.

The relator is a citizen of Yolo County, and possesses
the qualifications entitling him to represent the senato-
rial district of which Yolo County is a part.   He claims
that under the constitution and laws of the state a sen-
ator is to be elected in said district at the approaching
election, and he has been regularly nominated as a can-
didate for the office.   He has made formal demand upon
the governor to issue his proclamation for the election
of a senator from said district, and upon the county
clerk of Yolo County to file his certificate of nomination

pursuant to the election law. Both demands have been refused, and he seeks by these proceedings to enforce compliance therewith. In each case a general demurrer to the petition has been interposed, which raises the question whether, under a proper construction of the constitution and laws of the state, the terms of the senators elected in the year 1890 from the even-numbered senatorial districts, as well as those of the senators elected in 1888 from the odd-numbered districts, expire on the first Monday after the first day of January next. If they do not so expire, — if, notwithstanding the redivision of the state into new senatorial districts by the act of March 11, 1891, the senators elected in 1890 continue to hold office for the full constitutional term of four years, — it is conceded that the writ in each case must be denied. As we are very clearly of the opinion that this proposition must be affirmed, it will not be necessary to consider any other questions affecting the right of the relator to the relief which he demands.

So far as it rests in the power of the legislature to regulate the senatorial terms, there is no doubt as to the law. The act above cited, by which the state was redivided into legislative districts, as required by section 6, article IV., of the constitution, is plain and explicit, to the effect that the senators elected in 1890 from the even-numbered districts as defined by the act of 1883 shall continue in office for four years; that at the approaching election only senators from the odd-numbered districts are to be elected, and that the first election of senators from the even-numbered districts as now defined shall be in 1894. (Stats. 1891, p. 83, sec. 4.)

But it is contended that this act, in so far as it attempts to continue the senators from the even-numbered districts in office for a full term of four years, is in conflict with the constitution; and the question for determination, therefore, is the true construction of the provisions of the organic law with respect to this matter.

The number and arrangement of assembly and senatorial districts, the election of senators and assembly-

men, and their terms of office, are all regulated with
minute particularity by the constitution, article IV., sec-
tions 1–6, and the meaning of these provisions, so far, at
least, as the question here presented is involved, seems to
us to be plain and unambiguous.   The legislative power
is vested in a senate and assembly.   (Sec. 1.)   The sen-
ate consists of forty, and the assembly of eighty, mem-
bers, to be elected by districts numbered respectively
from one to forty and from one to eighty, each district
to be represented by one member.   This numbering is
to commence at the northern and end at the southern
boundary of the state.   In the formation of the districts,
no county is to be divided unless it contain sufficient
population within itself to form two or more districts,
nor is any part of any county to be united with any other
county, but, subject to these restrictions, the districts
are to be made and kept as nearly as possible equal in
population.   For this purpose, the census taken under
the direction of the Congress of the United States in the
year 1880, and every ten years thereafter, is made the
basis of fixing and adjusting the legislative districts,
and it is made the duty of the legislature at its first ses-
sion after each census to adjust such districts and reap-
portion the representation.   (Secs. 5, 6.)   Senators are
chosen for a term of four years (sec. 4), and one half
of the members are to be elected every two years.   All the
members of the assembly are chosen biennially for a
term of two years.   (Sec. 3.)   The members of both
houses are elected on the first Tuesday after the first
Monday of the even-numbered years, and their terms of
office and the session of the legislature commence on the
first Monday after the first day of January next ensuing.
(Secs. 2, 3, and art. XX., sec. 20.)

These are the general, important, and permanent fea-
tures of the scheme of legislative organization embodied
in the constitution.

Confining ourselves to the senators, it is important to
note these two fundamental provisions respecting their
election and term of office: Their term of office is four

years, and one half of their number is to be elected every two years. If there are any exceptions to this rule, they should be found in the constitution itself, and if any such exceptions are found, it must be held, upon a familiar principle of construction, that they are the only exceptions, and that the rule, subject to such exceptions as are expressly enumerated, is invariable in its operation. Looking, then, to the terms of the constitution, we find that there are two, and only two, exceptions made to the rule therein prescribed, and these evidently designed for the mere purpose of putting into regular operation the permanent system and policy indicated by the rule itself.

At the time of the adoption of the constitution in 1879, the state was divided by law into twenty-nine senatorial districts, numbered from 1 to 29, from which forty senators were elected, — twenty from the odd-numbered and twenty from the even-numbered districts (Act of March 16, 1874.) The first election under the new constitution was to take place in 1879 for all the members of the legislature and all the officers of the reorganized state. The regular terms of the members of the senate and assembly were four and two years respectively; of the officers of the executive department, four years; of the justices of the supreme court, twelve years; of the superior court justices, six years. But since it was desired that the general state elections should be held on the even-numbered years, it was provided that the terms of all the officers elected at the first election should be shortened one year, so that their successors could be elected in 1880, 1882, 1884, and so on. For this reason the forty senators elected in 1879, in common with all other persons elected at the same time to offices, the regular term of which is four years, were limited to a term of three years. This was one necessary exception to the rule, and there was one other equally necessary. The forty senators elected in 1879 for a term of three years would go out of office at the beginning of 1883, and their forty successors would be

elected in November, 1882. In order to bring about the alternate election every two years of one half of the senators, it was necessary, sooner or later, to shorten the terms of one half of them by two years. It was assumed that the legislature of 1881, in obedience to the express injunction of the constitution, article IV., section 6, would redistrict the state for legislative purposes upon the basis of the census of 1880, and in accordance with the constitutional scheme; that the state, being so redistricted, the forty senators elected in 1882 would be chosen from the new districts; and that the time would be ripe for putting in operation the system of electing one half of the senators every two years. Accordingly, it was provided that the seats of the twenty senators elected in the year 1882 from the odd-numbered districts should be vacated at the end of the second year.

These, and no other, exceptions are made by the constitution to the rule which it prescribes, and we know of no authority in the courts, or the executive, or the legislature itself, to enlarge the list.

This, however, is what, in effect, we are asked to do. Yolo County, which by the act of 1883 constituted, together with Napa County, the ninth district, is by the act of 1891 joined with Sutter and Yuba counties to form the new sixth district. Sutter and Yuba were, under the act of 1883, in the twelfth district. Similar changes have been made all over the state. Very few counties are now in a senatorial district bearing the same number as that under which they were ranged before the new act. Of the rest, some have been changed from one odd to another odd number, others from one even to another even number, others from even to odd, and no less than four counties — Lassen, Modoc, San Luis Obispo, and Yolo — from odd to even numbers. In such counties as were comprised under odd numbers and so remain, the voters will, of course, have an opportunity of choosing senatorial representatives at the approaching election. In counties that were comprised under even numbers, and which so remain, the voters will not have an oppor-

tunity of choosing senatorial representatives this year, but they will be represented by the senators for whom they voted two years ago. In counties formerly in even but now in odd numbered districts, the voters will participate in the choice of senators at this election, notwithstanding the senators for whom they voted two years ago in their old districts hold over for two years longer. In other words, they will have double their fair and equal representation in the senate; while the voters in counties, like Yolo, which have been transferred from odd to even numbered districts will have no opportunity of participating in the choice of senators at this election, notwithstanding the terms of the senators chosen by them four years ago will have expired. In other words, such counties will be deprived of their fair and equal share of representation in the senate.

Undoubtedly these are inconvenient and deplorable results, but it must be assumed that they were foreseen and deliberately accepted by the framers of the constitution. Whatever the fact may be as to the actual amount of prescience by which the deliberations of the convention were guided, the courts, in construing the constitution, are bound to suppose that any inconveniences involved in the application of its provisions, according to their plain terms and import, were considered in its formation, and voluntarily accepted as less intolerable than those which are thereby avoided, or as fully compensated by countervailing advantages.

But with respect to this matter it cannot be doubted that the framers of the constitution fully understood that at every redivision of the state into senatorial districts inconveniences similar to those above set forth must necessarily ensue, and the fact that they made no provision for a remedy proves that they did not regard them as of paramount importance. Certain it is, at all events, that so far from attempting to remedy the evil by providing that all of the senators should go out of office together after every redivision of the state, they placed in the constitution more than one clear and express in-

junction which must be willfully disregarded in resort-
ing to that method of correction.

It is conceded in the argument, and it is manifestly
true, that if there is to be an election in the sixth dis-
trict in 1892, there must be an election in every other
even-numbered district in the state, or in other words,
that the whole forty senators must be elected at one time,
instead of one half every two years, as the constitution
requires. And another consequence involved in this
contention is, that not only must the constitutional term
of the senators elected in 1890 be reduced by two years,
but unless we are to abandon for all time the constitu-
tional scheme of rotation in senatorial elections, the
terms of one half of the forty senators chosen this year
would have to be reduced to two years, in order that half·
of the senators might be chosen in 1894. But if this
were to be done, how would it be done? and by what au-
thority? The constitution contains no provision on the
subject, and affords no rule of decision, except a rule by
analogy, under which it might be plausibly argued that
the provision respecting the senators chosen in 1882
should be applied to those chosen in 1892, with the ef-
fect of vacating the seats of all senators from odd-num-
bered districts at the end of two years. But such an
argument, we think, would be more plausible than sound,
and such a decree would be more like making than ex-
pounding the law.

The case of *McPherson* v. *Bartlett*, 65 Cal. 577, was re-
ferred to in the argument, but we do not understand that
counsel make any claim that the point involved in these
proceedings was there decided. The opinion, it is true,
contains an observation not necessary to the argument,
and purely *obiter*, to the effect that the terms of one half
of the senators will necessarily be shortened to two years
every time the legislative districts are readjusted. But
this was a question not involved in the case, either di-
rectly or indirectly, and the *dictum* of the court cannot
have proceeded from very mature consideration.

The history of that case is as follows: It was, as we

have seen, made the duty of the legislature of 1881 to divide the state into forty senatorial districts upon the basis of the census of 1880, for the purpose of electing forty senators in 1882 to succeed the forty senators elected in 1879, for a term of three years; and in order to put in operation the system of rotation by which one half of the senators should be elected every two years, it was provided that the seats of the twenty senators elected in 1882 from the odd-numbered districts should be vacated at the expiration of the second year. (Art. IV., sec. 5.)

In anticipation, apparently, that the legislature of 1881 might fail to redistrict the state, as enjoined in section 6, it was provided that until such redistricting senators and assemblymen should be elected by the districts and apportionment then established by law. (Sec. 6.) The legislature of 1881 did fail to redistrict the state, and as a consequence, forty senators were chosen in 1882 from the twenty-nine old districts to succeed the forty senators chosen from the same districts in 1879 for the shortened term of three years. These senators and assemblymen elected at the same time constituted the legislature of 1883, which took up and performed the task, neglected by their predecessors, of redistricting the state for legislative purposes in the manner enjoined by the constitution. (Stats. 1883, pp. 58–85.)

By the forty-second section of the act establishing senatorial districts (p. 61), it was provided that at the general election in 1886 forty senators should be elected, one from each district; that those elected from the odd-numbered districts should hold office for two years, and that their successors should be elected in 1888, and every four years thereafter; that the senators elected from the even-numbered districts should hold their office for four years, and that their successors should be elected in 1890, and every four years thereafter. By these provisions the legislature undoubtedly supposed that they had put into regular and permanent operation the scheme of the constitution, and evidently they also

supposed that all the senators elected in 1882 would hold their offices for the full constitutional term of four years, and until the election and qualification of the forty senators to be elected in 1886. But in *McPherson* v. *Bartlett*, 65 Cal. 577, decided just prior to the election of 1884, it was held that the twenty senators chosen in 1882 from the fifteen odd-numbered districts according to the old apportionment held their offices for only two years, and consequently that their successors must be elected in 1884.

The point actually involved and decided was certainly a doubtful one, and three of the justices dissented from the conclusions of the court; but the decision, whether right or wrong, has no application here. It merely gave effect to a clause of the constitution which, in terms, applied to the senators elected from the odd-numbered districts in November, 1882. There is no similar clause applying to any subsequent election, and to make that special and exceptional provision a ground for shortening the terms of the senators elected in 1890 would be to decide, not only without a rule, but without even a plausible argument from analogy.

In short, the theory of the petitioner is too widely at variance with the theory of the constitution, to bear investigation. By the scheme of the constitution, we have biennial sessions of a legislature composed of eighty assemblymen elected biennially, and of forty senators chosen one half every two years for a term of four years, covering two sessions of the legislature. Under the theory of the petitioner, with nothing to support it against the plain terms of the constitution except the *argumentum ab inconvenienti*, at every fifth election forty senators must be elected at once, and at two out of every five elections twenty senators must be elected for terms of two years instead of terms of four years. It is impossible to reconcile the provisions of the constitution with such an intention on the part of its framers, and equally impossible, in view of the painstaking detail with which their intentions in other respects are set forth, to suppose that they would have omitted to make express pro-

visions covering matters of so much importance, if they wished to accomplish that for which the relator is contending.

Our conclusion is, that the senators chosen in 1890 hold their offices until January, 1895, and consequently that there can be no election of a senator from the.sixth district in 1892.

The writs are denied.

GAROUTTE, J., McFARLAND, J., SHARPSTEIN, J., DE HAVEN, J., and PATERSON, J., concurred.