[Civ. No. 14262. Third Dist. Mar. 1, 1974.]

DANIEL VISNICH, Plaintiff and Respondent, v.
SACRAMENTO COUNTY BOARD OF EDUCATION et al.,
Defendants and Appellants.

[Civ. No. 14239. Third Dist. Mar. 1, 1974.]

SACRAMENTO COUNTY BOARD OF EDUCATION, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
DANIEL VISNICH, Real Party in Interest.

## COUNSEL

John B. Heinrich, County Counsel, for Defendants and Appellants and for Petitioner.

Nathaniel S. Colley for Plaintiff and Respondent and for Real Party in Interest.

No appearance for Respondent.

## OPINION

THOMPSON, J.*—On September 6, 1972, plaintiff and respondent, hereinafter referred to as plaintiff, filed a petition for writ of mandate against the Sacramento County Board of Education, its members individually, and Sacramento County Committee on School District Organiza-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

tion and its members individually, alleging that the seven trustee areas of the Sacramento County Board of Education did not meet the requirements of the one man, one vote, requirement established by the United States Supreme Court in the case of *Baker* v. *Carr* (1962) 369 U.S. 186 [7 L.Ed. 2d 663, 82 S.Ct. 691]. It was alleged, and no one disputes in this proceeding, that the seven trustee areas were grossly disproportionate in population.

On October 3, 1972, the trial court issued its ruling that the seven trustee areas were in need of reapportionment and directed that the Sacramento County Committee on School District Organization (whose members by law also constitute the Sacramento County Board of Education) reapportion the said trustee areas in accordance with the provisions of section 602 of the Education Code.[1]

The Sacramento County Committee on School District Organization prepared a reapportionment plan which was approved by the court on March 9, 1973, which plan is not here challenged. At the same time the court took under submission a request by plantiffs that a special election be held on November 6, 1973 (the date of the state general election), at which time all trustees would be required to stand for office despite the fact that none of their terms of office had expired.

On July 31, 1973, the trial court issued its memorandum of intended decision ordering that a special election be held on November 6, 1973, at which time all the trustees would stand for election, without any provision for the staggering of the terms of office of the trustees as provided by law. After the settling of findings, the court entered its judgment in conformity with its previously announced intended decision and a peremptory writ was issued directing the holding of the election as ordered.

On September 7, 1973, the Sacramento County Board of Education filed a notice of appeal. On September 14, 1973, plaintiff sought an order pur-

---

[1]Section 602: "Upon request of the county board of education, the county committee on school district organization by a two-thirds vote of the members, may change the boundaries of any or all of the trustee areas of the county. The trustee areas shall be as nearly equal in population as may be, except that in establishing the boundaries of the trustee areas the county committee may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the trustee areas. Changes in boundaries shall be made in writing and filed with the county board of supervisors not later than the first day of March of any school year.

"In those counties in which the election of members of county boards of education are required to be held on the same date as prescribed for the election of members of governing boards of school districts, as provided in Section 605, the county committees on school district organization shall fix the boundaries of trustee areas, insofar as possible, to coincide with the boundaries of school districts."

suant to section 1110b of the Code of Civil Procedure, directing that the appeal not operate as a stay of execution of the judgment, which order was issued by the trial court.

On October 1, 1973, defendants filed a petition for a writ of mandate with this court to compel the superior court to vacate its order that the appeal not operate as a stay of execution. On September 24, 1973, a defendant member of the Sacramento County Board of Education filed an appeal from the order made by the trial court under the provisions of section 1110b of the Code of Civil Procedure (declaring that the appeal would not stay the election) and also filed a petition for a writ of supersedeas to stay the order.

On October 15, 1973, this court issued its stay order and subsequently denied plaintiffs' petition for reconsideration. On November 1, 1973, the Supreme Court of the State of California denied plaintiffs' petition for a writ of mandate to set aside the stay order.

The decision of the California State Supreme Court in *Legislature* v. *Reinecke,* 10 Cal.3d 396 [110 Cal.Rptr. 718, 516 P.2d 6], decided November 28, 1973, makes unnecessary any protracted discussion of the law applicable to this case inasmuch as that case, decided since the commencement of these proceedings, appears to be dispositive of the issues herein.

For example, the *Legislature* v. *Reinecke* case, *supra,* indicates a strong judicial policy that the court will only interpose its will and reapportion voting districts if the appropriate legislative body, given the opportunity, fails to do so. The case of *Silver* v. *Brown* (1965) 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132], enunciates even more strongly this policy. It is only when the legislative body remains obdurate and does not, given the opportunity to do so, reapportion to achieve a constitutionally permissible result that the court will act as was done in the *Reinecke* case, *supra.*

Here, we have no such problem. It is conceded that the defendant board did adopt an acceptable reapportionment plan. The only remaining issue is whether or not an election should be held to elect simultaneously new board members for each of the newly reapportioned areas. We note in passing that an election has already been held to elect a trustee in a newly reapportioned district, and that three such districts will elect trustees at the June 1974 primary, leaving only three districts in which new trustees will not be elected until 1976, again at the June primary election.

In facing the identical problem in *Legislature* v. *Reinecke, supra,* at pages 405-406, our state Supreme Court stated: "These inequalities among groups of electors [being afforded the opportunity to vote in the newly re-apportioned districts] are the inevitable byproduct of reapportioning a legislative body whose members are elected for staggered four-year terms. Since these inequalities flow directly from provisions of the California Constitution, we are not free to obviate them unless they constitute invidious discriminations violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

"It is now settled that as it applies to state electoral districting 'the proper equal protection test is not framed in terms of "governmental necessity," but instead in terms of a claim that a State may "rationally consider." *Reynolds* v. *Sims, supra,* at pages 580-581 [377 U.S. 533 (12 L.Ed.2d 506, at pages 537-538, 84 S.Ct. 1362)].' (*Mahan* v. *Howell* (1973) 410 U.S. 315, 326 [35 L.Ed.2d 320, 331, 93 S.Ct. 979, 986].) Although the *Mahan* case dealt with permissible deviations from strict population equality among districts, its rationale appears equally applicable to deviations from strict equality resulting from reapportionment coupled with staggered terms. The state may rationally consider stability and continuity in the Senate as a desirable goal which is reasonably promoted by providing for four-year staggered terms. The resulting inequality among electors is limited to the two-year period following reapportionment and results in even less temporary disenfranchisement than the up to four-year disenfranchisement that may be imposed on residents who move into a senate district or who become of voting age shortly after an election has taken place. To obviate the inequality would substantially interfere with the orderly operation of the four-year staggered terms system after every reapportionment.[fn.13] We conclude that adherence to staggered terms following reapportionment involved no invidious discriminations. (*Pate* v. *El Paso County, Texas* (W.D.Tex. 1970) 337 F.Supp. 95, 98-99, affd., 400 U.S. 806 [27 L.Ed.2d 38, 91 S.Ct. 55]; *Ferrell* v. *State of Oklahoma ex rel. Hall* (W.D.Okla. 1972) 339 F.Supp. 73, 82, affd., 406 U.S. 939 [32 L.Ed.2d 328, 92 S.Ct. 2045]; *Griswold* v. *County of San Diego* (1973) 32 Cal.App.3d 56, 62-64 [107 Cal.Rptr. 845], hg. den.)[fn.14]

"[fn.13] In *People* v. *Pendegast, supra,* 96 Cal. 289, 295 [31 P. 103], the court pointed out the difficulties underlying the contention that elections should be held in all 40 senatorial districts following reapportionment. 'And another consequence involved in this contention is, that not only must the constitutional term of the senators elected in 1890 be reduced by two years, but unless we are to abandon for all time the constitutional

scheme of rotation in senatorial elections, the terms of one half of the forty senators chosen this year would have to be reduced to two years, in order that half of the senators might be chosen in 1894. But if this were to be done, how would it be done? and by what authority? The constitution contains no provision on the subject . . . .'

"[fn.]4 We recognize that when the Legislature reapportioned the Senate in 1965 it provided that there should be an election in all 40 districts in 1966. (Elec. Code, § 30121.) That reapportionment involved the radical change from a territorial-based apportionment to a population-based apportionment, and in view of the gross population disparities among existing districts, equal protection may well have compelled the Legislature to terminate all existing senatorial terms immediately following the next election. It is significant, however, that the Legislature provided for the return to the four-year staggered term system after the 1966 election (Elec. Code, § 30121) and that it made no attempt to depart therefrom in its abortive efforts to achieve reapportionment following the 1970 census."

It is true that in footnote 4 to said case (*ibid.*) the court noted that there may be situations which would require an immediate vote in each newly reapportioned district. We do not believe that this case is such a situation. In the first place no voter will be deprived of the opportunity to vote in the new district for a period of longer than two years. Secondly, we note that inasmuch as no provision was made for staggered terms as required by law, additional proceedings would be required in the lower court to provide for such staggered terms, one consequence of which might be to make impossible the holding of elections in June 1974 in the properly constituted reapportioned district, a result which would be wholly undesirable.

Plaintiff postulates the theoretical situation that the terms of office holders could be extended to 10 or 15 years, and the operation of the one man, one vote, rule frustrated for an unconscionable time. But here we do not need to deal with a hypothetical situation. The plain fact is that a majority of the voters will be properly represented under the one man, one vote, doctrine within three months and all of them in two years.

Having discussed the merits of this case on its substantive issues, we now turn to procedural considerations. Sections 603 and 605 of the Education Code provide for the manner in which board of education members are elected, the staggering of terms and the length of terms and provide that the term of office of such member cannot be changed during his incumbency. It could not be contended that such a provision would countervail a provision of the United States Constitution. ▮ It appears clear, how-

ever, that a proceeding in mandamus is not an appropriate remedy to try the issues raised by plaintiff. The law appears to be unquestioned that title to an elective office cannot be litigated by any other means than in quo warranto by the state. Appplied to the instant case, the terms of office of duly elected board members cannot be foreshortened by a proceeding such as this. (*Board of Supervisors* v. *Superior Court* (1957) 150 Cal.App. 2d 618 [310 P.2d 37].) In an appropriate case perhaps the Attorney General of the state could be compelled to institute suit, but that action was not taken in this case. It therefore appears that the trial court exceeded its jurisdiction in ordering a special election which would have reduced the terms of office of some board members.

■ Plaintiff argues that inasmuch as the board as presently constituted is not in compliance with the one man, one vote, rule it holds office illegally. This contention deserves little comment. The trial court made no finding to this effect nor could it have done so. Furthermore, this issue is squarely and as adversely decided to the respondents as in the case of *Silver* v. *Brown, supra,* 63 Cal.2d, wherein the court states at page 281: "There is no merit in the contention that because the present apportionment of the Senate and Assembly is invalid, the Legislature is not empowered to act. By repeatedly encouraging invalidly apportioned state legislatures to reapportion themselves, the United States Supreme Court has clearly recognized that until a new legislature is elected, the existing legislature may validly legislate. (*Reynolds* v. *Simms,* 377 U.S. 533, 586-587 [12 L.Ed.2d 506, 84 S.Ct. 1362]; *Maryland Committee* v. *Tawes,* 377 U.S. 656, 676 [12 L.Ed.2d 595, 84 S.Ct. 1442]; *WMCA, Inc.* v. *Lomenzo,* 377 U.S. 633, 655 [12 L.Ed.2d 568, 84 S.Ct. 1418]; see *Scott* v. *Germano,* 381 U.S. 407, 409 [14 L.Ed.2d 477, 478, 85 S.Ct. 1525, 1527].)"

Clearly, the Sacramento County Board of Education had both the power and duty to cause itself to be reapportioned, which it did, and to carry on its functions without interruption.

The judgment of the trial court, requiring a special election for members of the Sacramento County Board of Education, is reversed.

Richardson, P. J., and Regan, J., concurred.