(79 N. W. Rep. 863.)

---

JOSEPH MILLER *vs.* A. V. SCHALLERN.

Opinion filed May 23, 1899.

**Statute Mandatory Requiring Stamping of Ballots.**

> Section 524 of the Revised Codes considered, and the following provision thereof *held* not to be directory merely, but mandatory, viz: "In the canvass of the votes any ballot which is not indorsed as provided in this chapter by the official stamp and initials shall be void and shall not be counted."

**Statute Not in Conflict with Constitution.**

> *Held*, further, that said statutory provisions are valid enactments, and are not repugnant to any provisions of the state constitution.

**Illegal Ballots Rejected.**

> Certain ballots, as stated in the opinion, were voted and deposited in the ballot box, without having indorsed or written thereon the initials of an inspector or judge of the election precinct in which said ballots were cast. *Held*, that said ballots were illegal ballots, and that the board of canvassers could not lawfully canvass and count the same.

**Error of Board of Canvassers.**

> *Held*, further, that the court below erred in its judgment sustaining the canvass of said votes which was made by the board of canvassers. The judgment is reversed, and the contest dismissed.

Appeal from District Court, Morton County; *Lauder*, J.

Election contest between Joseph Miller and A. V. Schallern. Judgment for plaintiff, and defendant appeals.

Reversed.

*E. C. Rice, B. W. Shaw,* and *Cochrane & Corliss,* for appellant.

The ballots not marked with the initials of the inspector or one of the judges of .the election were illegally counted. § 524, Rev. Codes. This statute is mandatory. McCrary on Elections, § 190-191; *Slaymaker* v. *Phillips,* 42 Pac. Rep. 1049. *People* v. *Board,* 29 N. E. Rep. 332; *Peo.* v. *Person,* 19 N. Y. Supp. 297; *Parvin* v. *Wimberg,* 30 N. E. Rep. 790; *Horning* v. *Burgess,* 77 N. W. Rep. 446. It is also constitutional. *Slaymaker* v. *Phillips,* 40 Pac. Rep. 971, on rehearing 42 Pac. Rep. 1049. .In the following cases the Court by going into the construction of the statute necessarily conceded the constitutionality thereof. *Parvin* v. *Wimberg,* 30 N. E. Rep. 789; *Horning* v. *Burgess,* 77 N. W. Rep. 446; *West* v. *Ross,* 53 Mo. 350; *Peo.* v. *Person,* 19 N. Y. Supp. 297; *Peo.* v. *Board,* 29 N. E. Rep. 327; *Lippincott* v. *Felton,* 39 Atl. Rep. 646; *Sweeney* v. *Hjul,* 48 Pac. Rep. 1036. Where illegal votes are cast and it is not shown for .whom, the rule is to apportion them between the candidates in proportion to their respective votes in that precinct. McCrary on Elections, § 460-461; 6 Am. & Eng. Enc. L. 353; *Ellis* v. *May,* 58 N. W. Rep. 488; *Peo.* v. *Cicott,* 16 Mich. 315; *Moore* v. *Sharp,* 41 S. W. Rep. 587; *Heyfron* v. *Mahony,* 24 Pac. Rep. 93; *Russell* v. *McDowell,* 23 Pac. Rep. 183. There is authority for the proposition that in such case the vote of the entire precinct should be rejected. Paine on Elections, 513; *Heyfron* v. *Mahony,* 24 Pac Rep. 96; *Peo.* v. *Hanna,* 57 N. W. Rep. 738; *Phelps* v. *Schroda,* 26 O. St. 549-558. The ballots having identification marks on them are void. Sec. 559, Rev. Codes; *Sweeney* v. *Hjul,* 48 Pac. Rep. 1036; *Lauer* v. *Estes,* 53 Pac. Rep. 262; *Tebbe* v. *Smith,* 41 Pac. Rep. 454; *Peo.* v. *Board,* 50 N. E. Rep. 425; *Zeis* v. *Posswater,* 41 N. E. Rep. 796; *Parker* v. *Orr,* 41 N. E. Rep. 1002; *Vallier* v. *Brakke,* 64 N. W. Rep. 180; *Pennington* v.

*Hare,* 62 N. W. Rep. 116; *Ellis* v. *Glaser,* 61 N. W. Rep. 648. The ballots not marked in accordance with the statute are void. Ch. 76, Laws 1897; *Vallier* v. *Brakke,* 64 N. W. Rep. 180; *Mc-Kittrick* v. *Pardee,* 65 N. W. Rep. 23; *Church* v. *Walker,* 72 N. W. Rep. 101; Appeal of Gosnell, 40 Atl. Rep. 822; In re Vote Marks, 21 Atl. Rep. 962; In re Election Contest, 37 Atl. Rep. 523; *Waterman* v. *Cunningham,* 36 Atl. Rep. 395; In re Election Contest, 33 Atl. Rep. 703; In re Election Contest, 30 Atl. Rep. 955; *Tebbe,* v. *Smith,* 41 Pac. Rep. 454; *Slaymaker* v. *Phillips,* 42 Pac. Rep. 1049; *Sweeney* v. *Hjul,* 48 Pac. Rep. 1036; *People* v. *Moody,* 45 N. Y. Supp. 606; *People* v. *Common Council,* 46 N. Y. Supp. 701; *People* v. *Mehrer,* 46 N. Y. Supp. 898; *People* v. *Board of Canvassers,* 29 N. E. Rep. 327; *McMahon* v. *Polk,* 73 N. W. Rep. 77; *Whitman* v. *Zahonik,* 59 N. W. Rep. 57, 62. So of the ballots marked with a cross at the head of the Republican column and a cross in the square at the right of defendant's name, defendant is entitled to them. *Vallier* v. *Brakke,* 64 N. W. Rep. 180; *McKittrick* v. *Pardee,* 65 N. W. Rep. 23; *Church* v. *Walker,* 72 N. W. Rep. 101; *Dickerman* v. *Getsthorpe,* 47 Pac. Rep. 999; *State* v. *Franshaw,* 48 Pac. Rep. 1; *Heiskell* v. *Landrum,* 46 Pac. Rep. 120; *Curran* v. *Clayton,* 29 Atl. Rep. 930. Eight illegal votes were cast in Stevenson precintct, twenty votes were received without the initials of any election officer thereon. One of the judges of election in this precinct was a son of a candidate. These facts so impeach the good faith of the officers of election as to throw out the entire vote which was nearly solid for plaintiff. *Russell* v. *McDowell,* 23 Pac. Rep. 183; *Ferguson* v. *Allen,* 26 Pac. Rep. 570; *Londoner* v. *Peo.,* 26 Pac. Rep. 135-138. Where the returns are rejected as evidence each party must offer proof of all the votes that he claims in that precinct, and in the absence of any showing no votes will be counted for either party in such precinct. *Phelps* v. *Schroder,* 26 Ohio St. 558; *Russell* v. *State,* 11 Kan. 308; *Londoner* v. *Peo.,* 26 Pac. Rep. 138; *Attorney Gen'l* v. *McQuade,* 53 N. W. Rep. 944; 6 Am. & Eng. Enc. L. 353; Paine on Elections, § 592-596. Ballots counted for plaintiff, which were marked by a cross in the square at the head of the republican column and marked in no other way, were illegally counted, because Chap. 76, Laws 1897, authorizing the voter to vote in this way is unconstitutional, being repugnant to Sec. 61 Constitution. Chapter 76 is entitled "An act to amend section 491, Art. 4, Revised Codes of North Dakota of 1895, relating to elections." The title of Chap. 76 does not sufficiently state the subject of the act within the meaning of the constitution. Suth. St. Cr. § 101; *Webster* v. *Powell,* 18 So. Rep. 443; Matter of Knaust, 101 N. Y. 194; *Tingue* v. *Chester,* 101 N. Y. 303; *City* v. *Briggs,* 50 N. Y. 553; *State* v. *Commissioners,* 11 Pac. Rep. 902. The provisions of Chap. 76 relating to the mode of voting is not germaine to the subject set forth in the title, such subject being limited to the mode of preparing the ballot, and having no relevancy to the mode of voting it. Suth.

St. Const. § 87; *State* v. *Cornell,* 74 N. W. Rep. 433; *State* v. *Bowen,* 74 N. W. Rep. 615; *State* v. *Stewart,* 71 N. W. Rep. 998; *State* v. *Tibbets,* 71 N. W. Rep. 990; *German Am. F. Ins. Co.* v. *City,* 71 N. W. Rep. 995; *Lovenberg* v. *City,* 42 S. W. Rep. 1024; *O'Mara* v. *Wabash Ry. Co.,* 50 N. E. Rep. 821; *Ex parte Hewlett,* 40 Pac. Rep. 96; *State* v. *B. & M. Mut. Ben. Ass'n.,* 23 Kan. 499; *State* v. *Smith,* 35 Minn. 257; *State* v. *Madson,* 45 N. W. Rep. 856.

*H. G. Voss, J. F. Philbrick,* and *A. T. Patterson,* for respondent.

By section 121, the right to vote is a constitutional right in this state. Section 524, Rev. Codes, declaring that the failure of the inspector to place his initials upon the ballot destroys the vote, is void as curtailing a constitutional privilege. *Moyer* v. *Van De Vanter,* 41 Pac. Rep. 60; Opinion of Grossbeck, J., in *Slaymaker* v. *Phillips,* 42 Pac. Rep. 1049. Mere irregularities in the appointment of election officers or the misconduct of election officers will not justify a throwing out of their returns, unless fraud such as would change the result of the election is affirmatively shown. *Peo.* v. *Avery,* 61 N. W. Rep. 4; *Bell* v. *Faulkner,* 19 S. W. Rep. 480; 10 Am. & Eng. Enc. L. (2d Ed.) 670. There is no principle which can prevent the legislature from substituting any provision they please for any other provision, whether cognate or not, if the new section is not foreign to the subject indicated by the title of the law in which it is inserted. *Underwood* v. *McDuffee,* 15 Mich. 361; Cooley's Const. Lim. § 181; Suth. St. Ct. 135, note 7; *Denver Circle R. Co.* v. *Nestor,* 10 Colo. 403, 15 Pac. Rep. 714; *State* v. *Madson,* 45 N. W. Rep. 856.

WALLIN, J. This is an election contest, which originated in the County of Morton, and which involves the title to the office of county auditor of that county. The facts which we regard as decisive of the case are simple, and are not disputed. The plaintiff and defendant were the only candidates for said office at a general election held in said county in November, 1898, and the names of no other persons appeared on the official ballots as a candidate for said office. The votes cast at said election were canvassed by the county canvassing board, and as a result of such canvass it was found and determined by the canvassers that the plaintiff had received 706 votes for said office, and that the defendant had received 719 votes for said office, and thereafter a certificate of election in due form, based upon said official canvass, was delivered to the defendant by the county auditor. At the trial in the court below the ballot boxes used at said election in a number of the voting precincts of said county were brought into court and opened, and the ballots found therein were counted and considered in open court. As a result of such count and consideration, a number of important questions bearing upon the regularity of the election were developed; but, in the view which the Court has taken of the undisputed facts embodied in this record, it will be unnecessary, in this opinion, to

go further than to decide a single point which arises upon the action of the canvassing board in counting the ballots cast in one precinct, viz: the precinct of Antelope Creek.

Counsel concede that if the ballots cast in said precinct, and which were counted and credited to the plaintiff by the canvassers, were illegal ballots, and should not have been so counted or credited, the plaintiff is not entitled to said office, and that the defendant was properly given the certificate of election. As we have reached the conclusion, for reasons hereafter to be stated, that the ballots cast in the precinct of Antelope Creek were not official ballots, and hence that the same were improperly counted by the canvassers, we shall not have occasion, in view of the conceded facts, to discuss other questions presented by the record. With respect to the ballots cast at said precinct, the trial court finds the decisive fact in the following language: "That in Antelope Creek precinct 41 ballots were cast for plaintiff, and no ballot was cast for defendant; that none of said ballots had indorsed thereon, or had thereon at any place, the initials of the inspector, or of one of the judges of the election, in said Antelope Creek precinct, as required by section 515, Rev. Codes; that the board of county canvassers, in canvassing said votes, canvassed for and allowed to plaintiff all of said 41 votes in said Antelope Creek precinct, and canvassed for and allowed to defendant no vote in said Antelope Creek precinct." Upon the facts so found we are called upon to determine whether, under existing laws regulating the elective franchise in this state, a ballot not having upon it the initials of either the inspector or judge of the election precinct in which it was cast is a lawful ballot, despite such omission.

The decision of this question will involve a construction of certain sections of the state constitution, and chapter 8 of the Political Code, and particularly section 524 of the Revised Codes. Said section embraces the following provisions: In the canvass of the votes any ballot which is not indorsed as provided in this chapter by the official stamp and initials shall be void and shall not be counted." The legislative intent, as embodied in the statute, is clear and unmistakable; and hence it will be unnecessary, and would be improper, to resort to rules of construction in its interpretation. Its mandate is explicit and imperative. According to its terms, if its terms are to govern, it was the plain and obvious duty of the canvassers to reject, and not count, the ballots cast at the precinct of Antelope Creek. Nor can we discover any ground for construing this section as a directory enactment. Had the statute simply declared that the ballot should be authenticated as the official ballot by placing thereon the indorsements as required by section 515, Rev. Codes, and had stopped there, and had wholly omitted to declare the consequences of an omission to so indorse them, the duty of considering whether or not this provision was directory or mandatory might, in the supposed case, have been cast upon the courts. The case as it stands, however, forbids that this Court should enter

upon any such inquiry. The statute is clearly a mandatory enactment, and hence its requirements, however drastic, must be strictly enforced by the courts, unless the same are in conflict with some constitutional provision.

This brings us to the criticism of the statute which is made by counsel in behalf of the plaintiff. Counsel contend that the statute is unconstitutional, and cite in support of this point a case which is clearly authority for plaintiff's contention. See *Moyer* v. *Van De Vanter* (Wash.) 41 Pac. 60. And we may as well state here that the only other case where the constitutional question involved here is directly raised, which has come to our notice, is a case decided in Wyoming. See *Slaymaker* v. *Phillips*, 42 Pac. Rep. 1049. Turning to the state constitution, we find that section 121 thereof defines and describes the classes of persons who shall be deemed qualified electors. This is the entire scope and purpose of the section, and no attempt is made, in this provision of the organic law, either to regulate or restrict the exercise of the voting privilege which it confers. It gives the right to vote to certain classes of the inhabitants of the state, and there it stops. Surely no one can reasonably claim that the voters named and enfranchised by this section of the constitution may, without the passage of any statute whatever regulating the voting franchise, proceed to vote and have their votes counted. It needs no argument to demonstrate that this feature of the constitution is not self-executing. The only other section of the instrument which is at all pertinent to the present inquiry is section 129, which reads as follows: "All elections of the people shall be by secret ballot, subject to such regulations as shall be provided by law." The effect of these two sections of the constitution, when read together, is to confer upon certain inhabitants of the state the privilege of voting by a secret ballot; but the last clause of section 129 expressly looks forward to legislation, and declares that the voting privilege is to be regulated, and, in terms, is to be "subject to such regulations as shall be provided by law." This provision is not at all unusual in state constitutions. It is well known that the voting franchise is subject to legislative control to a greater or less extent in all the states of the United States. On the other hand, it is elementary that any law would be at once pronounced unconstitutional and void by the courts which has the effect of disfranchising a person to whom the constitution gives the right to vote. This principle was applied in a case decided by this Court. *State* v. *Denoyer*, 6 N. D. 586, 72 N. W. Rep. 1014.

But in the case at bar it is not claimed that the statute (section 524) in terms deprives any voter of his constitutional privilege, or that it necessarily so operated. On the contray, counsel's utmost contention is that an enforcement of the statute as it reads may in some cases operate, and in the case at bar will operate, practically to deprive electors of their constitutional right to vote, and to have their votes counted. But this cannot be made a test of the validity of any regulative statute. There are many regulative provisions

in election statutes the enforcement of which will and do operate to deprive voters of their privilege, and yet their constitutionality cannot be successfully challenged. Take, for example, the provisions of law requiring voters to register as a condition of voting. Such provisions are found in nearly all of the states, and a voter who neglects or refuses to comply with such provisions is not permitted to cast his ballot. In such cases the voter will invoke his constitutional rights in vain. The statutory regulation in the supposed case will operate to deprive him of his otherwise perfect right to vote. See *State* v. *Hilmantel,* 21 Wis. 574. For further illustration take a supposed case of an elector of this state who, before going to the polling place, has by some means supplied himself with an exact copy of the official ballot, and that he tenders this ballot to the precinct officers. Such ballot would, of course, be refused. If the voter saw fit to refrain from voting an official ballot, he would thereby lose his vote, and yet the ballot tendered in the case suggested would in all respects intelligently represent the wishes of the voter as to the candidates named in his ballot. Here, again, a merely statutory provision, which requires all voters to secure an official ballot from certain designated officers, would operate to deprive an elector of a right secured by the constitution.

Other illustrations will suggest themselves, but they are unnecessary, because the right of some legislative control over the voting privilege secured by state constitutions is conceded. In fact, there could be no valid election held under the constitution of this state without affirmative legislation providing the requisite machinery for holding the same. A mere naked constitutional right to vote is absolutely valueless, without some supplemental action on the part of the legislature. See 6 Am. & Eng. Enc. Law (2d Ed.) p. 563, note 4, and *Munroe* v. *Wells,* 83 Md. 505, 35 Atl. 142. But the case cited by plaintiff,—*Moyer* v. *Van De Vanter,* supra,—while conceding to the lawmaker the general right of legislative control, holds that the prohibition against the counting of votes on which the initials of a precinct official are not written is an unreasonable regulation, and, as it may possibly operate, in isolated instances, to disfranchise the voter, it is therefore unconstitutional and void. But, in our judgment, this reasoning is fallacious, and, moreover, trenches upon very dangerous ground. It proceeds upon the false notion that it is the province of the courts to enter the conceded domain of the legislature, and, upon a question of the expediency of a given regulative measure, substitute the judgment of the courts for that of the constitutional body which has the original right to make the regulation. Upon this point Judge Cooley voices the settled rule. In commenting upon the province of the judiciary, that learned jurist said: "It cannot run a race of opinions upon points of right, reason, and expediency with the lawmaking power." See Cooley, Const. Law (5th Ed.) p. 202, and note 1. See, also, 6 Am. & Eng. Enc. Law (2d Ed.) p. 1086, and cases cited in note 1.

In construing the prohibitory provisions contained in section 524 of the election law, it should be borne in mind that the same are vital parts of an elaborate and well-matured system of voting machinery. The characteristic and vital feature of the system is an official ballot. For cogent reasons, unnecessary to mention here, the legislature of this state, following the lead of many older states, where the matter had received long and conscientious consideration, has seen fit to adopt what is known as the "Australian Method" of regulating the elective franchise. As we have said, the characteristic and distinctive feature of this system is an official ballot. The state charges itself with the responsibility of furnishing the elector with such ballot, and in doing so announces to him in explicit terms that no other ballot can be placed in the ballot box or counted by the canvassers. In furtherance of this policy laws have been passed which are designed to place in the hands of every voter a genuine official ballot. Among other laws for this purpose is section 493, Rev. Codes, which reads as follows: "Each county auditor shall deliver or cause to be delivered by mail or other reliable method to the inspector of election in each precinct in his county the official ballot prepared by him at least twenty-four hours before the hour of opening the polls on election day. Such ballots shall be delivered in sealed packages marked on the outside, plainly designating the number of ballots inclosed and the precinct for which they are intended. He shall also deliver or cause to be delivered to such inspector, or, if that is impracticable, to one of the judges of election of such precinct, a stamp, with an ink pad, for the purpose of stamping each ballot with the words 'Official Ballot' and the name or number of the precinct, the name of the county and the date of the election." Section 515 is also pertinent in this connection, and is as follows: "The inspector or one of the judges of election shall deliver ballots to the qualified electors. Before delivering any ballot to an elector the inspector or judge shall print on the back and near the top of the ballot, with a stamp provided for that purpose, the designation 'Official Ballot,' and the other words provided for in section 493, and also write his initials thereon. Each qualified voter shall be entitled to receive from the judges one ballot."

The capital purpose of these statutes, manifestly, is to provide the voter with an official ballot, and to enable him to make sure that he gets such ballot. Provision is made, not only that an official shall deliver such ballot to the voter, but, with the same purpose in view, the law requires the official to indorse the ballot so delivered, not merely with an official stamp, with which he is provided, but with his own initials as well. This legislation, therefore, places it within the power of every voter to determine whether a ballot which is handed to him by a precinct officer is or is not an official ballot. If it is not stamped and initialed as the statute directs, it is not an official ballot, and hence cannot lawfully be voted, or, if voted, cannot be lawfully counted. A glance at the ballot will at once apprise the voter whether the ballot has been so indorsed as to be

made an official ballot. The state has therefore safeguarded the privilege of voting and the purity of elections, not merely by casting duties upon certain officers, but also by affording the voter an opportunity to see and know personally whether or not he is voting a lawful ballot,—*i. e.* an official ballot. If he neglects to notice whether the paper delivered to him is a lawful ballot, properly indorsed as such, and proceeds, either negligently or willfully, to deposit an unlawful ballot in the box, he must then accept the consequences of his own acts, and lose his vote. In such case, as in the illustrative examples already given, the loss of the vote is the result of the voters own acts. True, in the case at bar, the official is derelict also; but this does not alter the fact that the voter had the legal right to demand and receive an official ballot from the precinct officers, and, if he fails in exercising this privilege, he has himself to blame, nor can the official be saddled with the whole responsibility of the omission. See concurring opinion of O'Brien, J., in *People* v. *Board of County Canvasser* (N. Y. App.) 29 N. E. Rep. 329. Election laws are framed upon the supposition that the voters are sufficiently enlightened to know their provisions; nor can such laws be enacted upon the contrary without inviting anarchy and political chaos.

Counsel argue that the omission to indorse the officer's initials on the ballot, being the omission of an official act merely, ought not to operate to annul the vote. But, if this argument is sound as to the initials, we can see no reason why it is not equally valid as to the matter of printing on the ballots the words contained in the official stamp, which the state provides and requires to be stamped on the ballot before it is delivered to the voter. The statute is equally plain, and its mandate equally imperative, in the one case as in the other; and the object in view in these two provisions is one and the same. That object is—First, to give the voter an official ballot which he may surely know to be such; and, second, to enable the public to identify the actual ballot cast in the event of an election contest. But what would be the result to this carefully devised and well-approved election law if the courts should hold these statutory requirements to be not binding either upon the voter or upon the precinct officials; that is to say, not binding in the sense that their nonobservance would not invalidate the ballot? We think such holdings would very soon destroy all that is valuable in the notable ballot reform which is embodied in the Australian system of voting. If the methods of securing the sanctity of the ballot now devised by legislative wisdom are to be annulled by mere judicial construction, we can conceive of none others which could not as readily be disposed of by the same false method of reasoning. If experience should show that the provisions of section 524 are unnecessarily rigid,—we do not think it will,—then it will become the duty of the legislature to intervene and devise some different regulation of the elective franchise.

We do not care to further elaborate upon the issues. All that

the writer of this opinion can say in support of the constitutionality of the prohibitive features of section 524 of the Revised Codes has been anticipated, and much better set forth, in the very able opinion of the Court in the case of *Slaymaker* v. *Phillips*, above cited, and which is directly in point upon the constitutional question involved. The case is exhaustive, and buttressed by strong authority. It covers the whole field of pertinent discussion. Its reasoning is clear and cogent, and all of its quotations from other cases are singularly apposite and convincing. The following authorities will be found to be much in point, although they are not cases in which the constitutional question here presented was directly drawn into discussion. In fact, it would appear that a doubt of the constitutionality of precisely similar statutes has never invaded the breasts of the learned judges whose opinions are cited below. See *People* v. *Board of County Canvassers* (N. Y. App.) 29 N. E. Rep. 332, 333; *People* v. *Person* (Sup.) 19 N. Y. Supp. 297; *Parvin* v. *Wimberg*, (Ind. Sup.) 30 N. E. Rep. 790-793; *Horning* v. *Burgess* (Mich.) 77 N. W. Rep. 446. In *Parvin* v. *Wimberg*, the Court said: "If a statute expressly declares any particular act to be essential to the validity of an election, or that the omission shall render the election void, the courts, whose duty it is to enforce the law as they find it, must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not; for such a statute is mandatory, and the court cannot enter into the question of its policy." Again, in *People* v. *Board of Canvassers*, supra, the Court say: "The law contemplates that the elector will not blindly rely upon any one, not even the election officers, in the preparation of the ballot. If he is handed an official ballot with a distinguishing mark upon it, or an improper indorsement, he is not obliged to vote it, but may procure a proper ballot." See, also, the work of Judge McCreary on Elections, §§ 190, 191.

It follows, from the authorities we have cited, that the board of commissioners improperly canvassed and counted the ballots cast at said precinct of Antelope Creek; said ballots not having been indorsed with the initials of any of the precinct officers. The judgment of the court below must be reversed, and the court is directed to dismiss this contest. All the judges concurring.