[No. 24046.  Department Two.  July 19, 1932.]

THE STATE OF WASHINGTON, *on the Relation of George F. Christensen, Plaintiff*, v. J. GRANT HINKLE, *Secretary of State, Respondent.*[1]

*W. O. Miller, Brooks & McEwen,* and *Raymond C. Sly,* for relator.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

[1]Reported in 13 P. (2d) 42.

MAIN, J.—The relator, by this proceeding, seeks a writ of prohibition directed against the secretary of state.

In 1930, the relator was elected to the state senate from the then district No. 16, which was composed of Klickitat and Skamania counties. His term of office was four years. At the same election at which relator was elected, initiative measure No. 57 (chapter 2 of the Laws of 1931, p. 31) was passed by a direct vote of the people. This measure, as indicated by its title, was an act relating to and providing for the number, district and apportionment of the members of the senate and house of representatives of this state, and repealed all acts in conflict therewith. Under this act, it was provided that the senate should consist of forty-six members, one of whom should be elected from each of the forty-six senatorial districts therein established. Prior to that time, the senate had consisted of forty-two members, one of whom was elected from each of the then forty-two districts.

The 1931 act enlarges the district from which the relator had been elected by adding to it the counties of Benton and Franklin. Under section 4 of the act, twenty-three districts will elect senators this fall for four-year terms. The relator's district is in this group. Twelve districts elect this fall for two years terms. There were twenty-one senators elected in 1930, ten of whom will have their terms shortened to two years, but those thus affected, other than the relator, are not parties to this proceeding.

The principal question is whether, by initiative measure No. 57, the term of office of the relator can be shortened from four years to two years. To determine this question, inquiry must be directed as to whether the measure, in this regard, violates the constitution of this state.

■ Section 3 of Article II of the constitution provides that the legislature shall provide by law for an enumeration of the inhabitants of the state in the year 1895, and every ten years thereafter; and at the first session of the legislature after such enumeration, and after each enumeration, made by the United States, "the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, . . . ."

Section 6 of the same article provides that, after the first election of senators, they shall be elected by single districts of convenient and contiguous territory at the same time and in the same manner as members of the house of representatives are to be elected; and further provides that

"They shall be elected for the term of four years, one-half of their number retiring every two years. The senatorial districts shall be numbered consecutively, and the senators chosen at the first election had by virtue of this constitution, in odd-numbered districts, shall go out of office at the end of the first year, and the senators elected in the even-numbered districts shall go out of office at the end of the third year."

It will be noted that the constitution fixed the term of senators at four years, and provided that one-half of their number should retire "every two years." The sentence immediately following this is an exception, and provides that senators chosen at the first election, in odd-numbered districts, should hold office for the period of one year, and senators elected in even-numbered districts for two years.

In 1901 (Laws of 1901, chapter LX, p. 79), the legislature passed an apportionment act, and at that time the membership of the senate was increased to forty-two. In the 1901 act, the same method was followed as was followed in initiative measure No. 57, in that certain senators who had been elected two years pre-

viously for four-year terms had their terms shortened to two years. That act is a legislative construction of the constitution, and, while not controlling, is a matter to be given due consideration.

If the number of the senators was increased, and each senator was elected for the four-year term, it would result in the senate being composed of members one-half of whom would not retire every two years. The purpose of having one-half of the number retire every two years was to provide a senate which should at all times, as nearly as possible, be composed of members one-half of whom were experienced in the duties of their offices, and this was in the interest of the public. On the other hand, the relator, individually, is primarily the one who is interested in sustaining his right to the four-year term for which he was elected in 1930. This would, as contended by the *Attorney General,* be more in the nature of a private interest, while, as indicated, the provision with reference to having the terms of one-half of the senators expire every two years is in the public interest. If there be conflict between the two provisions which cannot be reconciled, it would seem that the provision which was in the public interest should prevail over the other. The constitution with reference to this matter must be given a workable and practicable construction, and, when given such construction, it does not appear to us that the two provisions mentioned are necessarily in conflict.

In § 3 of the constitution, as above mentioned, after providing that the terms of the senators should be four years and one-half of their number retire every two years, there was an exception as to the first election held under the constitution. It does not appear to us that it would be unreasonable to hold that it was

the intent of the constitution that this exception should be carried forward to future apportionments and districting when the number of the senators would be increased, and, if the terms of some of those previously elected were not shortened, there would result a senate one-half of the terms of whose members did not expire every two years.

This was the holding of the supreme court of North Dakota in the case of *State ex rel. Williams v. Meyer,* 20 N. D. 628, 127 N. W. 834, where the same question which is now before us was before that court under constitutional provisions which were very similar to those of this state, and which have a like meaning.

Section 26 of the constitution of North Dakota provided that the senate should be composed of not less than thirty, nor more than fifty, members. Section 27 provided: "Senators shall be elected for the term of four years, except as hereinafter provided." Section 30 provided that the senatorial districts should be numbered consecutively and the number of senators should be divided into two classes; and that

"Those elected in the districts designated by even numbers shall constitute one class, and those elected in districts designated by odd numbers shall constitute the other class. The senators of one class elected in the year 1890 shall hold their office for two years. Those of the other class shall hold their office four years, and the determination of the two classes shall be by lot, so that one-half of the senators, as nearly as practicable, may be elected biennially."

With reference to those constitutional provisions, it was there said:

"On the one hand, it is contended that the provisions of § 27, *supra,* that senators shall be elected for the term of four years, controls, while the relator urges that the exception to that section, namely, 'except as hereinafter provided,' applies in this instance; that the

provision of § 30, that the senators shall be divided into two classes,—those in the even-numbered districts constituting one class, and those in the odd-numbered districts the other class,—so that one-half of the senators, as nearly as practicable, may be elected biennially, is controlling. We are of the opinion that the contention of the relator must be sustained. It was the clear intent of the constitutional convention to provide a senate which should at all times, as nearly as practicable, be composed of members, one-half of whom were experienced in the duties of their offices. The terms of senators and members of the house of representatives, unlike those of most officials, expire at the end of the term for which they are elected. They do not hold until their successors are elected and qualify. In the event of a failure to elect, a vacancy results and continues until it is filled either at a special or general election. The house of representatives is a new body every two years. After each general election the house ceases to exist as a body, and the new membership becomes the new house. Not so with the senate. It is a continuous body. It never goes out of existence, and the purpose of the constitutional provisions on this subject which we have quoted was to maintain a senate which should, at all times, have one-half its members, as nearly as practicable, experienced men. The plan adopted is analogous to that of the senate of the United States. The term of United States senators being for six years, the members were divided into three classes, the terms of one such class expiring at the end of each Congress, approximately two-thirds of the senators being thus old senators. The adjustment of those classes has been so carried forward that the successor of any senator always takes his place in the class to which his predecessor was assigned. If the contention of the respondent in this case be correct, the senate is not composed of two classes as nearly equal in number as practicable, when a reapportionment is made, as was done in 1907, and the number of districts largely increased. If, however, those senators elected in new districts after a reapportionment, from the odd-numbered districts, are elected for terms which expire at the same time that the terms of those in the old odd-

numbered districts expire, and those in the new even-numbered districts expire when those from the old even-numbered districts expire, the program mapped out to begin with the session of 1891 is consistently adhered to, and the purpose of the provisions cited is accomplished. While the provisions are not as clear as they might have been if stated in some other form, yet this construction is much clearer and much easier to reach from the language employed, when we remember the division sought to be made, than would be that contended for by the respondent. The phrase, 'except as hereinafter provided,' referred to, relates not only to the senators of the even class elected in 1890, but it is applicable to those elected after any reapportionment at which new districts are created, so far as necessary to bring them into harmony with the plan of the Constitution regarding the membership of the senate and the terms of office of the senators. It happened in this instance that the even-numbered senators were elected for two years only. Had the apportionment taken place at the preceding session of the legislative assembly, the senators from even-numbered districts would have held for four years and those from the odd-numbered districts for only two years. The respective endings of the terms of the two classes of senators was forever established by the lot drawn in 1891. To place a literal interpretation on the four-year provision as to the term of senators would classify some odd-numbered with some even-numbered districts, and interminable confusion and disorder would result. An illustration is convincing. By the reapportionment made in 1901, nine new senatorial districts were created, and the election of nine new senators provided for. If these nine new senators were all elected for four years and their districts thereby added to one of the two classes as fixed in 1891, the fundamental principle that the two classes remain as nearly as practicable equal in number would be clearly violated, and one would thereafter have contained 15 members and the other 25, and had a second reapportionment followed in a corresponding year, new districts created by the second reapportionment would

still further have increased the disproportion in the numbers of the districts in the two classes.

"It appears that the senate has construed these provisions in harmony with our understanding of the intent of the constitutional convention. After the reapportionment made in 1901 it was at least assumed that those in one class held for two years and those in the other for four years. We are not advised that any question was ever raised as to the correctness of this construction, but we are advised that elections were held at the expiration of the two-year terms of the senators in one class, and new senators were elected and seated without question."

The relator seeks to distinguish that case, and contends that the constitution of North Dakota is different from that of this state, in that, there, there was, after the provision that senators should be elected for the term of four years, the provision, "except as hereinafter provided." That clause expressly refers to § 30 of the constitution, wherein it was provided that senators of one class elected in 1890 should hold office for two years.

In the constitution of this state, after providing that senators shall be elected for four years, there is no express provision "except as hereinafter provided;" but in the same section and the sentence immediately following there is a provision that senators chosen at the first election by virtue of the constitution, in odd-numbered districts, should hold office for one year, and senators elected in the even-numbered districts for three years. Here was a direct exception written into the constitution, even though it was not expressly referred to as such.

The only difference between the two constitutions is that, in the Dakota constitution, there is an express reference to the subsequent section of the constitution

where it was provided that senators elected in the year 1890, in one class, should hold office for two years, while in the constitution of this state the definite exception is made without expressly referring to it in language such as "except as hereinafter provided." We see no material difference in the language and legal effect of the two constitutions. It follows, therefore, that, in our view, no constitutional right of the relator was invaded by initiative measure No. 57 when the term of office to which he had been previously elected was reduced from four to two years.

The relator cites a number of cases from other jurisdictions, and claims that they support his position, one of which is *People ex rel. Snowball v. Pendegast,* 96 Cal. 289, 31 Pac. 103. But in that case the redistricting act of the state of California did not shorten the terms of senators who had previously been elected. The question there was different from that here presented, but it will be admitted that, in the opinion in that case, there is language that was not necessary to the decision which supports relator's position in the case now before us. In one or two of the other cases cited by the relator, there is language which was not necessary to the question involved, which would tend to support his position. The only case, so far as we are informed, where the precise question here for determination was presented and determined, is the case of *State ex rel. Williams v. Meyer,* 20 N. D. 628, 127 N. W. 834, *supra.*

It is further contended by the relator that the people did not have the right, by an initiative measure, (a) to make an apportionment; and (b) that initiative measure No. 57 is ineffective because it prevented the legislature of 1931 from making an apportionment in accordance with the 1930 census. These contentions,

it seems to us, are sufficiently answered by the case of *State ex rel. Miller v. Hinkle,* 156 Wash. 289, 286 Pac. 839, and what has hereinbefore been said.

The writ will be denied.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.