2002 ND 53

**Jerome KELSH, Petitioner,**

v.

**Alvin A. JAEGER, in his capacity as Secretary of State, State of North Dakota, Respondent.**

No. 20020060.

Supreme Court of North Dakota.

March 28, 2002.

David R. Bliss, Bliss Law Office, Bismarck, for petitioner.

Wayne K. Stenehjem, Attorney General, Attorney General's Office, Douglas Alan Bahr (appeared), Solicitor General, Attorney General's Office, Bismarck, for respondent and Office of Attorney General.

Jeffrey S. Weikum, Pagel Weikum Law Firm, Bismarck, for North Dakota Democratic–NPL Party.

Thomas D. Kelsch, Kelsch, Kelsch, Ruff & Kranda, Mandan, for North Dakota Republican Party.

PER CURIAM.

[¶ 1] Jerome Kelsh petitions this Court to exercise its original jurisdiction to issue a writ of prohibition enjoining the Secretary of State from administering an election for the office of state senator in District 26 for the 2002 primary and general elections. Kelsh asserts N.D.C.C. § 54–03–01.8 truncates his four-year senate term and thereby violates N.D. Const. art. IV, § 4, requiring a senator's term must be for four years. We hold the language in N.D.C.C. § 54–03–01.8 that allows an incumbent state senator to decide whether to stop an election for state senator in District 26 in 2002 is an impermissible delegation of legislative power, and we strike it. By allowing an election for state senator in District 26 in 2002, N.D.C.C. § 54–03–01.8 provides the electors in this newly redrawn district their constitutional right to elect a state senator from the district. We hold the remainder of the statute, in truncating Kelsh's term, does not violate N.D. Const. art. IV, § 4, and we deny the writ.

I

[¶ 2] A writ of prohibition is an extraordinary remedy to prevent an inferior body or tribunal from acting without or in excess of jurisdiction when there is not a plain, speedy, and adequate remedy in the course of law. N.D.C.C. § 32–35–01; *Old Broadway Corp. v. Backes*, 450 N.W.2d 734, 736 (N.D.1990). Under N.D. Const. art. VI, § 2, this Court has authority to exercise original jurisdiction and to issue remedial writs necessary to properly exercise its jurisdiction. The power vested in this Court to issue original writs is discretionary and may not be invoked as a matter of right. *State ex rel. Kusler v. Sinner*, 491 N.W.2d 382, 384 (N.D.1992). It is well-settled that our power to exercise original jurisdiction extends only to those cases in which the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people. *Id.* To warrant the exercise of this Court's original jurisdiction, the interest of the state must be primary, not incidental, and the public—the community at large—must have an interest or right that may be affected. *State ex rel. Wefald v. Meier*, 347 N.W.2d 562, 564 (N.D.1984).

[¶ 3] The issues in this case involve the people's right to elect representatives to the state Legislature and the

Legislature's right to truncate the terms of elected representatives by legislative redistricting. The case involves the people's right of franchise and the Legislature's authority to effectively disenfranchise some of the electorate. Few matters encompass more public interest than issues involving the power of the people to govern themselves through the voting process. *See Meier*, 347 N.W.2d at 564. We conclude, therefore, this matter is of public interest and warrants our exercise of original jurisdiction.

## II

[¶ 4] Kelsh asserts N.D.C.C. § 54–03–01.8, as amended in 2001 by the 57th Legislative Assembly, violates N.D. Const. art. IV, § 4, because the statute effectively reduces his term as an elected senator in District 26 from four years to two years. The 57th Legislative Assembly adopted a redistricting plan after the 2000 federal census. The plan reduced the number of senatorial districts from 49 to 47, fixed the number of senators and representatives, and divided the state into senatorial districts.

[¶ 5] Relevant to this case is N.D. Const. art. IV, § 2, which states, in part:

The legislative assembly shall fix the number of senators and representatives and divide the state into as many senatorial districts of compact and contiguous territory as there are senators. The districts thus ascertained and determined after the 1990 federal decennial census shall continue until the adjournment of the first regular session after each federal decennial census, or until changed by law.

The legislative assembly shall guarantee, as nearly as is practicable, that every elector is equal to every other elector in the state in the power to cast ballots for legislative candidates. A sen-

ator and at least two representatives must be apportioned to each senatorial district and be elected at large or from subdistricts from those districts.

Also relevant is N.D. Const. art. IV, § 3, which states:

The legislative assembly shall establish by law a procedure whereby one-half of the members of the senate and one-half of the members of the house of representatives, as nearly as is practicable, are elected biennially.

The 57th Legislative Assembly in 2001 amended N.D.C.C. § 54–03–01.8 to provide:

A senator from an odd-numbered district must be elected in 2002 for a term of four years and a senator from an even-numbered district must be elected in 2004 for a term of four years. Except as otherwise provided in this section, a senator from an even-numbered district in which there is another incumbent senator as a result of legislative redistricting must be elected in 2002 for a term of two years. However, if as a result of legislative redistricting a senator elected in 1998 is placed in an even-numbered district there must be an election in 2002 for a term of two years unless the senator elected in 1998 files by February 15, 2002, a written statement with the secretary of state stating that the senator elected in 1998 agrees that there need not be an election for a senator in 2002 and that the senator elected in 2000 may continue that senator's term; based on this requirement, districts twenty and twenty-six may be required to elect senators in 2002. A senator from an odd-numbered district in which there is another incumbent senator must be elected in 2002 for a term of four years; based on this requirement, district thirty-one must elect a senator in 2002. The term of a senator from an even-numbered

district who is placed in an odd-numbered district as a result of legislative redistricting expires as of December 1, 2002; based on this requirement, the term of the senator elected in district twelve in 2000 expires as of December 1, 2002, and district twenty-three must elect a senator in 2002.

[¶ 6] Joel Heitkamp was elected in 1998 to a four-year term as state senator in former District 27. Jerome Kelsh was elected in 2000 to a four-year term as state senator in District 26. As part of the Legislature's 2001 redistricting plan, a substantial portion of former District 27, including Heitkamp's township of residence, was placed in District 26. Section 54–03–01.8, N.D.C.C., requires District 26 to elect a state senator in 2002 for a two-year term unless Heitkamp, the senator who was elected in 1998 and was placed in District 26 by the redistricting plan, filed a written statement by February 15, 2002 agreeing that there need not be an election in District 26 for state senator in 2002. Heitkamp did not file such a statement by February 15, 2002. Consequently, N.D.C.C. § 54–03–01.8 requires District 26 to elect a state senator in 2002 and truncates the term of Kelsh, the incumbent senator in District 26 elected to a four-year term in 2000. Kelsh asserts the statute, by reducing his four-year term to a two-year term, violates N.D. Const. art. IV, § 4, which provides: · "Senators and representatives must be elected for terms of four years." Kelsh asks this Court to declare the statute unconstitutional and to issue a writ of prohibition enjoining the Secretary of State from administering a primary and a general election to elect a state senator in District 26 in 2002. The resolution of this issue requires us to construe our state constitution and to determine whether the Legislature, in amending N.D.C.C. § 54–03–01.8, contravened any part of it.

[¶ 7] When interpreting the state constitution, our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement. *City of Bismarck v. Fettig,* 1999 ND 193, ¶ 8, 601 N.W.2d 247. The intent and purpose of a constitutional provision is to be determined, if possible, from the language itself. *State v. Hagerty,* 1998 ND 122, ¶ 13, 580 N.W.2d 139. We give words in a constitutional provision their plain, ordinary, and commonly understood meaning. *Tormaschy v. Hjelle,* 210 N.W.2d 100, 102 (N.D.1973). When interpreting constitutional provisions, we apply general principles of statutory construction. *Hagerty,* at ¶ 13. We must give effect and meaning to every provision and reconcile, if possible, apparently inconsistent provisions. *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898, 908 (N.D.1977). We presume the people do not intend absurd or ludicrous results in adopting constitutional provisions, and we therefore construe such provisions to avoid those results. *North Dakota Comm'n on Med. Competency v. Racek,* 527 N.W.2d 262, 266 (N.D.1995).

[¶ 8] This Court addressed predecessor constitutional provisions involving staggered senate terms and the four-year term requirement in *State ex rel. Williams v. Meyer,* 20 N.D. 628, 127 N.W. 834 (1910). In *Meyer,* a senator elected to a four-year term in 1908 was required by the Legislature's reapportionment of senate districts to run for reelection in 1910, after having served only two years of his term. In support of his argument that he was entitled to serve out his four-year term, the senator relied on Section 27 of the constitution, the predecessor to N.D. Const. art. IV, § 4, which provided "Senators shall be elected for the term of four years, except as hereinafter provided." The relator, a

candidate for nomination in the 1910 primary election in the senator's district, relied on Section 30 of the constitution, the predecessor to N.D. Const. art. IV, § 3, which provided:

> The senatorial districts shall be numbered consecutively from one upwards according to the number of districts prescribed, and the number of senators shall be divided into two classes. Those elected in the districts designated by even numbers shall constitute one class, and those elected in the districts designated by odd numbers shall constitute the other class. The senators of one class elected in the year 1890 shall hold their office for two years. Those of the other class shall hold their office for four years and the determination of the two classes shall be by lot, so that one half of the senators, as nearly as practicable, may be elected biennially.

[¶ 9] The *Meyer* Court held the senator's term could be truncated under the circumstances, reasoning:

> On the one hand, it is contended that the provisions of section 27, supra, that senators shall be elected for the term of four years, controls, while the relator urges that the exception to that section, namely, "except as hereinafter provided," applies in this instance; that the provision of section 30 that the senators shall be divided into two classes, those in the even-numbered districts constituting one class and those in the odd-numbered districts the other class so that one-half of the senators, as nearly as practicable, may be elected biennially, is controlling. We are of the opinion that the contention of the relator must be sustained. It was the clear intent of the constitutional convention to provide a Senate which should at all times, as nearly as practicable, be composed of members one-half of whom were experienced in the duties of their offices.... [The Senate] is a continuous body. It never goes out of existence, and the purpose of the constitutional provisions on this subject which we have quoted was to maintain a Senate which should at all times have one-half its members, as nearly as practicable, experienced men.... The phrase, "except as hereinafter provided," referred to, relates not only to the senators of the even class elected in 1890, but it is applicable to those elected after any reapportionment at which new districts are created, so far as necessary to bring them into harmony with the plan of the Constitution regarding the membership of the Senate and the terms of office of the senators.... To place a literal interpretation on the four-year provision as to the term of senators would classify some odd-numbered districts with some even-numbered districts, and interminable confusion and disorder would result. An illustration is convincing. By the reapportionment made in 1901 nine new senatorial districts were created, and the election of nine new senators provided for. If these nine new senators were all elected for four years and their districts thereby added to one of the two classes as fixed in 1891, the fundamental principle that the two classes remain as nearly as practicable equal in numbers would be clearly violated, and one would thereafter have contained 15 members and the other 25, and, had a second reapportionment followed in a corresponding year, new districts created by the second reapportionment would still further have increased the disproportion in the numbers of the districts in the two classes.

*Meyer*, 20 N.D. at 631–33, 127 N.W. at 836. The *Meyer* court held the four-year term requirement of Section 27 was subservient to the Section 30 requirement of staggered senatorial terms when necessary to ensure

that the senate maintain, "as nearly as practicable," one-half of its number as experienced members.

[¶ 10] There are conflicting Attorney General opinions addressing this issue. In a March 4, 1992, letter opinion, Attorney General Nicholas J. Spaeth concluded, without discussing the *Meyer* decision, that N.D. Const. art. IV, § 4, precluded the Legislature from constitutionally limiting the term of a senator elected in the general election in 1990 to a term of two years by requiring those senators to run again in 1992. In a July 13, 2001, letter opinion, Attorney General Wayne Stenehjem overruled the 1992 letter opinion. Attorney General Stenehjem relied in part on the *Meyer* decision and concluded "the Legislative Assembly has, as part of its constitutional authority to maintain the staggering of terms for senators and representatives, the authority to reduce the terms of one or more senators or representatives from four years to two years if necessary to effectuate an otherwise valid redistricting plan."

[¶ 11] The phrase in Section 27, "except as hereinafter provided," relied upon by the *Meyer* court to support its decision, was deleted from the N.D. Const. art. IV, § 4, mandate of four-year senate terms when Section 4 was approved by the electorate on June 12, 1984, as a part of a rewrite of the legislative article, and became effective December 1, 1986. *See* 1983 N.D. Sess. Laws ch. 728, § 4. The provision was again amended and approved by the voters, effective July 1, 1997, in its current form, but the previously deleted language was not restored. 1997 N.D. Sess. Laws ch. 570, § 2. The Secretary of State argues the *Meyer* reasoning nevertheless controls and supports the truncation of Kelsh's senate term.

[¶ 12] There are two feasible conclusions about the people's intent in deleting the language at issue. The deletion of the language could be construed as an expression of the people's intent to preclude the Legislature from truncating the term of a state senator to less than four years under any circumstances. However, the deletion of the language could also be construed as a recognition that the deleted language was unnecessary surplusage, because the constitutional provisions can be and must be harmonized, without any need to rely on the deleted language. *See Little v. Traynor,* 1997 ND 128, ¶ 29, 565 N.W.2d 766 (stating the most plausible explanation for the Legislature deleting the statutory language is that the language was found to be surplusage).

[¶ 13] In construing and interpreting the constitution, we must give effect and meaning to every provision and reconcile, if possible, apparently inconsistent provisions. *Freed,* 251 N.W.2d at 908. If we were to construe N.D. Const. art. IV, § 4, in a literal sense as absolutely prohibiting the Legislature, under any circumstances, from truncating the term of a senator to less than four years, the Legislature would be severely hampered in accomplishing its constitutional mandates to establish a redistricting plan giving every elector an equal vote and to elect one-half of the members of the senate biennially. Such a narrow interpretation of N.D. Const. art. IV, § 4, would preclude the Legislature from redrawing any boundary that would truncate an incumbent senator's four-year term before its expiration. This could severely hamper the redistricting process.

[¶ 14] When the intentions of the people cannot be determined solely from the language of a constitutional provision itself, we may look to the historical context of an amendment and construe it in the light of contemporaneous history. *Hagerty,* 1998 ND 122, ¶ 17, 580 N.W.2d 139. This Court, in *Meyer,* found an overriding

objective of the people and purpose under the constitution for allowing the Legislature to truncate terms in a redistricting plan:

> [T]he purpose of the constitutional provisions on this subject which we have quoted was to maintain a Senate which should at all times have one-half its members, as nearly as practicable, experienced men.... To place a literal interpretation on the four-year provision as to the term of senators would classify some odd-numbered districts with some even-numbered districts, and interminable confusion and disorder would result.

*Meyer*, 20 N.D. at 632–33, 127 N.W. at 836.

[¶ 15] We do not believe the people intended to subvert this overriding objective by deleting the "except as hereinafter provided" language from N.D. Const. art. IV, § 4. The Legislature retains its constitutional mandates under N.D. Const. art. IV, §§ 2 and 3, to provide senatorial districts with equal votes for the electorate and to elect one-half of the senate members each biennium. Implicit in those mandates is the need for flexibility to truncate terms as necessary to the redistricting process.

[¶ 16] Faced with an identical issue under similar circumstances, the Washington Supreme Court in *State ex rel. Christensen v. Hinkle*, 169 Wash. 1, 13 P.2d 42, 44 (1932), cited and followed this Court's decision in *Meyer*, even though the Washington state constitution required senators "shall be elected for four years," but did not contain language similar to the "except as hereinafter provided" clause. The Washington Supreme Court concluded such language was unnecessary for it to follow the *Meyer* rationale in construing the Washington constitution. The Washington Supreme Court concluded its state constitution permitted the Legislature to truncate the terms of state senators as

part of a constitutionally mandated redistricting plan:

> We see no material difference in the language and legal effect of the two Constitutions. It follows, therefore, that in our view no constitutional right of the relator was invaded by Initiative Measure No. 57 when the term of office to which he had been previously elected was reduced from four to two years.

*Hinkle*, 13 P.2d at 44.

[¶ 17] We recognize N.D. Const. art. IV, § 4, establishes that senators must be elected for terms of four years. The mandates under N.D. Const. art. IV, §§ 2 and 3, however, require the Legislature to redraw districts after each decennial census to maintain elector vote equality, and to establish a procedure wherein one-half of the members of the senate are elected biennially, and they must be interpreted and harmonized with the provision for four-year senate terms under Section 4. In so doing, we construe the constitution as allowing the Legislature to truncate a senator's four-year term when necessary to further the constitutional mandates for redistricting.

[¶ 18] It is a well-settled rule that we will not construe a statute or constitutional provision to reach an absurd result. *See Bouchard v. Johnson*, 555 N.W.2d 81, 83 (N.D.1996). When the Legislature establishes a redistricting plan to guarantee, as nearly as practicable, that every elector's vote is equal, it will often have to redraw district boundaries to accommodate the changes and movement in population. If we construe N.D. Const. art. IV, § 4, to prohibit the Legislature from truncating any senator's four-year term in its redistricting plan, it could not place the residences of two incumbent senators into one district; otherwise the redrawn district would have two senators until one of the senate terms expired. To avoid this, the

Legislature would have to take into account the location of each incumbent senator's residence and refrain from drawing lines that would place two incumbent senators in a single district. This interpretation would, in our view, lead to an absurd result. It would require the Legislature to draft district lines to accommodate incumbent senators' housing locations to avoid having a district with double representation. We reject such an inflexible interpretation of N.D. Const. art. IV, § 4, as it relates to the Legislature's authority in accomplishing its redistricting mandates under N.D. Const. art. IV, §§ 2 and 3.

■■■ [¶ 19] Construing all provisions of our state constitution together, we conclude that under N.D. Const. art. IV, § 4, a senator generally must be elected for a term of four years. However, the Legislature can truncate senate terms when reasonably necessary to accomplish another constitutional mandate.

### III

■■■ [¶ 20] Section 54–03–01.8, N.D.C.C., provides there will be an election in 2002 in District 26, but gives one person the power to stop it.

> However, if as a result of legislative redistricting a senator elected in 1998 is placed in an even-numbered district there must be an election in 2002 for a term of two years *unless the senator elected in 1998 files by February 15, 2002, a written statement with the secretary of state stating that the senator elected in 1998 agrees that there need not be an election for a senator in 2002 and that the senator elected in 2000 may continue that senator's term; based on this requirement, districts twenty and twenty-six may be required to elect senators in 2002.*

(Emphasis added.) Giving an incumbent senator an opportunity to run immediately in an election in his new district simply advances the incumbent senator's private interest, rather than a public interest. *See Hinkle,* 13 P.2d at 43. It provides no justification to override the constitutional mandate of four-year senate terms under N.D. Const. art. IV, § 4. The problem here is compounded in that the Legislature has placed in the hands of one person the authority to stop an election. For the reasons which follow, we conclude the above underscored language of N.D.C.C. § 54–03–01.8 is void as an impermissible delegation of legislative power.

■■■ [¶ 21] The Legislature has the power to administer the election process. N.D. Const. art. II, § 1; *Dist. One Republican Comm. v. Dist. One Democrat Comm.,* 466 N.W.2d 820, 832 (N.D.1991); *Miller v. Schallern,* 8 N.D. 395, 400, 79 N.W. 865, 866 (1899). Except as otherwise provided in the constitution, the Legislature may not delegate legislative powers to others, *MCI Telecomms. Corp. v. Heitkamp,* 523 N.W.2d 548, 554 (N.D.1994), including a subset of its members, *Eklund v. Eklund,* 538 N.W.2d 182, 189 (N.D.1995) (Sandstrom, J., concurring), or private citizens. *Enderson v. Hildenbrand,* 52 N.D. 533, 541, 204 N.W. 356, 359 (1925). In *County of Stutsman v. State Historical Soc'y,* 371 N.W.2d 321, 327 (N.D.1985), this Court explained:

> Unless expressly authorized by the State Constitution, the Legislature may not delegate its purely legislative powers to any other body. . . . However, the Legislature may delegate powers which are not exclusively legislative and which the Legislature cannot conveniently do because of the detailed nature. Simply because the Legislature *may* have exercised a power does not mean that it *must* exercise that power. In *Ralston Purina Company [v. Hagemeister,* 188 N.W.2d 405 (N.D.1971)], we pointed out

that the true distinction between a delegable and non-delegable power was whether the power granted gives the authority to make a law or whether that power pertains only to the execution of a law which was enacted by the Legislature. The power to ascertain certain facts which will bring the provisions of a law into operation by its own terms is not an unconstitutional delegation of legislative powers. *Ferch v. Housing Authority of Cass County*, 79 N.D. 764, 59 N.W.2d 849 (1953). However, the law must set forth reasonably clear guidelines to enable the appropriate body to ascertain the facts.

This Court has upheld legislative delegations of power when the law contains reasonable guidelines by which the person or body to whom a power is delegated may operate. *See, e.g., MCI Telecomms. Corp.*, 523 N.W.2d at 555; *North Dakota Council of Sch. Adm'rs v. Sinner*, 458 N.W.2d 280, 285–86 (N.D.1990); *Southern Valley Grain Dealers Ass'n v. Bd. of County Comm'rs*, 257 N.W.2d 425, 435 (N.D.1977). When reasonable guidelines are given, the delegated power to ascertain facts for operation of a law is not unconstitutional, because that power pertains to execution of the law. *Syverson, Rath and Mehrer, P.C. v. Peterson*, 495 N.W.2d 79, 82 (N.D.1993). Under our constitutional system, the Legislature may not delegate to itself, or to a subset of its members, executive or judicial functions. *Eklund*, 538 N.W.2d at 189 (Sandstrom, J., concurring).

[¶ 22] In *Montana–Dakota Util. Co. v. Johanneson*, 153 N.W.2d 414 (N.D.1967), the Legislature gave rural electric cooperatives the unfettered discretion to refuse consent for a public utility to extend its power lines into a rural area with rural electric cooperative lines or facilities. This Court concluded the legislation was an unconstitutional delegation of legislative power:

[F]or all practical purposes, the co-operative, and not the Public Service Commission, is the body that determines whether a certificate of public convenience and necessity shall be granted to a public utility in the area outside the limits of the municipality.

Under Section 3, the co-operative has this power regardless of whether it or the utility is best qualified to serve the area and regardless of the fact that the public utility applying to serve such area might more economically render such service. No guidelines are set out in the law to be followed by the co-operative in making such determination, and no safeguards are provided against arbitrary action by the co-operative. . . . The Legislature must declare the policy of the law and must definitely fix the legal principles which are to control the action taken.

. . . .

If the Legislature had determined that the public utilities should serve only in urban areas, that would have been a legislative determination. But Section 3 of Chapter 319 presents a different situation. The Legislature itself does not determine who is to furnish electrical service in rural areas. It leaves that determination to the electric co-operative, and this clearly is an unlawful delegation of legislative authority.

*Johanneson*, 153 N.W.2d at 421.

[¶ 23] Here, too, we conclude the Legislature has unlawfully delegated its authority. As amended, N.D.C.C. § 54–03–01.8 gives unfettered discretion to a single person to stop an election for state senator in District 26 in 2002. We therefore hold the above underscored language of N.D.C.C. § 54–03–01.8 confers an unconstitutional delegation of legislative power and cannot stand. We strike this statuto-

ry language, and as a consequence, N.D.C.C. § 54–03–01.8 requires an election for state senator in District 26 in 2002.

## IV

[¶ 24] The Legislature can truncate four-year state senator terms provided under N.D. Const. art. IV, § 4, when necessary to accomplish another constitutional mandate. However, the Legislature does not have unfettered authority to truncate terms during the redistricting process. This Court in *Meyer* held the constitutional provision requiring four-year terms could be overridden by the Legislature to further its constitutional mandate to stagger senate terms in establishing a redistricting plan to ensure that the senate maintains one-half of its number as experienced members. To withstand the constitutional attack here, N.D.C.C. § 54–03–01.8 must further some constitutional mandate or directive to justify its requirement that an election for state senator be held in 2002 in District 26, which results in truncating Kelsh's senate term.

[¶ 25] District 26, as redrawn under the Legislature's redistricting plan, is a substantially different district than former District 26. Currently, the population in District 26 is 14,327. The redistricting plan moved 4,509 individuals from former District 26 into new Districts 28 and 29. It also moved 6,676 individuals into current District 26 from former Districts 25 and 27. Consequently, the redistricting plan has resulted in a 46.6 percent change of the population from former District 26 compared to current District 26.

[¶ 26] Our state constitution requires: "*A senator* and at least two representatives *must* be apportioned to each senatorial district and *be elected* at large or from subdistricts *from those districts*." N.D. Const. art. IV, § 2 (emphasis added). When a district undergoes a boundary change that results in a 46.6 percent change of the actual persons residing in the district, the question is whether the state senator elected by the district prior to the change can be considered to have been elected from the changed district.

[¶ 27] Addressing a similar question, the Alaska Supreme Court in *Egan v. Hammond*, 502 P.2d 856, 873–74 (Alaska 1972), held that the governor had the power to terminate senate terms as incidental to his general reapportionment powers and explained:

> A need to truncate the terms of incumbents may arise when reapportionment results in a permanent change in district lines which either excludes substantial numbers of constituents previously represented by the incumbent or includes numerous other voters who did not have a voice in the selection of that incumbent.

[¶ 28] *See also Kentopp v. Anchorage*, 652 P.2d 453, 462 (Alaska 1982) (stating formulation of a reapportionment plan is a decidedly political process and the Legislature has discretion whether to truncate terms); *In re Apportionment Law*, 414 So.2d 1040, 1047 (Fla.1982) (holding election of state senators after redistricting resulting in truncation of terms was justified to accomplish state constitutional requirement that senators be elected from their districts).

[¶ 29] When reapportionment results in a substantial constituency change, the constitutional requirement that a senator be elected from a district may justify truncating an incumbent senator's term to give the electorate in the newly drawn district an opportunity to select a senator from that district. The petition before us questions the constitutional validity of N.D.C.C. § 54–03–01.8 in requiring an election in District 26 and,

thereby, truncating Kelsh's four-year term. We do not address any aspect of the statute as it relates to other districts in the state for which no challenge is before us. An appellate court need not answer questions, the answers to which are unnecessary to resolve the case before it. *See Moszer v. Witt*, 2001 ND 30, ¶ 20, 622 N.W.2d 223.

[¶ 30] To resolve this case, we need not decide how significant the change in a district's constituency must be to justify the legislative decision to have an election that would truncate the term of an incumbent senator. We need only decide whether the redrawing of the District 26 boundaries with a resulting 46.6 percent change of the district's constituency justifies having an election in 2002, even though it truncates Kelsh's term.

[¶ 31] Although not every change in a district will justify having an election, we conclude a constituency change of 46.6 percent does. Nearly one-half of the electors of District 26, as formulated under the 2001 redistricting plan, have never had an opportunity to elect a state senator from the district. The newly drawn district contains within its boundaries two incumbent state senators, and that situation further exacerbates the disenfranchisement caused by the redrawn boundaries. We hold that N.D.C.C. § 54–03–01.8, by allowing an election in District 26 in 2002, accomplishes the Legislature's N.D. Const. art. IV, § 2, directive of establishing a redistricting plan under which a district's state senator is elected from the district. Consequently, we hold the statute justifi-

ably truncates Kelsh's term and is not unconstitutional in violation of N.D. Const. art. IV, § 4.

V

[¶ 32] In accordance with this opinion, we hold the Legislature may truncate four-year senate terms as provided under N.D. Const. art. IV, § 4, when necessary to further a constitutional mandate or directive. We hold the language of N.D.C.C. § 54–03–01.8, placing in one person the decision whether District 26 elects a state senator in 2002, is void as an impermissible delegation of legislative power. We further hold N.D.C.C. § 54–03–01.8, by requiring an election in District 26, furthers the N.D. Const. art. IV, § 2, constitutional mandate that a state senator be elected from the district and does not violate N.D. Const. art. IV, § 4. We therefore deny the petitioner's request for a writ of prohibition to enjoin the Secretary of State from holding a primary and general election in District 26 in 2002 for election of a state senator.

[¶ 33] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.