FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 00

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41638-7-II |
| Respondent, | Consolidated with: |
| v. | No. 42345-6-II |
| JOSEPH CORTEZ JONES, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Joseph Cortez Jones appeals his jury trial convictions and sentences for first degree burglary and second degree assault. Jones argues (1) that the State committed prosecutorial misconduct, (2) that he received ineffective assistance of counsel, (3) that the trial court violated his right to confront witnesses, (4) that insufficient evidence supports his burglary conviction, and (5) improper sentencing. Jones raises additional arguments in his Statement of Additional Grounds. Finding no trial error, we affirm the convictions. But we remand to the trial court to issue a corrected judgment and sentence consistent with this opinion because we hold that the trial court erred by imposing a variable period of community custody.

## FACTS

In 2010, Donald Barrows, a disabled veteran, and Monique Young were friends. On April 1, Barrows and Young were getting ready to leave Young's apartment when Jones arrived

outside the door. At the time, Young and Jones had been in a two-and-one-half year committed relationship. Jones knocked, tried to open the door, banged on it, and then kicked it in. Young was scared and ran into the bathroom. Barrows testified that Jones pushed, punched, and choked him. Eventually Jones ended up on top of Barrows, and Barrows thought he was dying because Jones choked him to unconsciousness.

## I. PRETRIAL AND TRIAL

The State charged Jones with first degree burglary and second degree assault. The trial court granted Jones's request for a trial continuance from September 20 to October 4, 2010, because counsel had only recently received Dr. Yolanda Duralde's report. During pretrial motions, the trial court denied Jones's motion to exclude Dr. Duralde's expert testimony on strangulation.

The State also moved to admit Young's 911 call into evidence. The trial court noted that the female on the recording was crying and hysterical, her ability to communicate with the 911 operator was impaired, and the caller appeared to believe there was a threat of harm because her voice was panicked. But, the trial court reserved ruling on its admission until after jury selection when it noted that it would "preliminarily rule that it's admissible." Verbatim Report of Proceedings (VRP) (Oct. 11, 2010) at 24. The next day, the State and Jones's counsel stipulated that a copy of the 911 call from Young was admissible as a business record under ER 803(a)(6), RCW 5.45.010 and RCW 5.45.020. It was later played at trial, over defense counsel's authenticity and confrontation violation objection, during testimony from the responding officer,

2

and again during the State's closing argument. Young did not respond to the State's subpoena that she appear in court and testify.

Barrows testified for the State. The State introduced police photographs of Barrows's injuries, damage to Young's apartment door, and a broken mirror. Next, Dr. Duralde testified about her training and expertise on the effects of strangulation on the human body. Although Dr. Duralde did not personally examine Barrows, she reviewed the police report and photos, and, opined that Barrows's neck marks were consistent with strangulation.

Next, Sergeant Robert Carpenter testified that he responded to a 911 call to Young's apartment. The State moved to play the 911 recording for the jury. Jones stated, "Just the previously stated objections," and the court admitted the 911 recording over Jones's objections. VRP (Oct. 12, 2010) at 109. Sergeant Carpenter testified about Barrows's physical condition and the condition of Young's apartment.

On cross-examination, Jones asked Sergeant Carpenter about how the fight started:

Q:    So you don't know how the fight got started?
A:    I know from—based on the evidence and the scene and the story that I was told

. . . .

Q:    I understand that. But in terms of— you still don't know for certain who started the fight?
A.    Well, no, I do. The person who forced that door open probably started the fight. I think if I was in my residence and somebody forced their way in, well, they would probably have a stiffer penalty.

VRP (Oct. 12, 2010) at 116-17. Jones did not object to Sergeant Carpenter's testimony either on direct or cross-examination.

Jones testified in his defense. According to Jones, although they had argued a few days before this incident, he and Young had keys to each other's homes and they came and went freely. Jones testified that on April 1, Jones knocked at Young's door and, not hearing a response, he put his key in the lock. He heard noises coming from inside the apartment. When Jones tried to open the door, somebody pushed it shut. Jones did not know who did so, but he knew it had to be a man because of the strength exerted. Jones responded by pushing back. When he got inside the door he was immediately hit twice in the face.

But on cross-examination, Jones admitted to forcing his way into Young's apartment and damaging the front door. Jones said the marks on Barrows's neck came from him trying to hold Barrows off with one hand and that he never had two hands on Barrows's neck. Jones testified that Barrows asked him to stop, but he admitted that he hit Barrows two or three more times in the face before leaving. As he left, he walked by Young outside on the phone with police.

The State argued in closing that when Jones showed up at Young's apartment, he became angry that another man was there, kicked down the door, attacked and beat up Barrows until he had Barrows pinned down in the bedroom closet, and strangled Barrows until he lost consciousness. The State argued that Jones had to "come up with an explanation" for the marks on Barrows's neck as opposed to Barrows who candidly told his story and had no motivation to lie or embellish or exaggerate what happened that day. VRP (Oct. 13, 2010) at 161 The State continued, "Of the two, Mr. Barrows is the one [who] has credibility[;] Mr. Jones has none,"[1] and

---

[1] VRP (Oct. 13, 2010) at 181.

4

> Obviously, Mr. Barrows told you that wasn't the case. The door came flying open, Monique[] Young took off for the bathroom and Mr. Jones came in and started beating the crap out of him. That is the most logical explanation. That is the most reasonable explanation and for the simple reason, it's the truth.

VRP (Oct. 13, 2010) at 183-84.

In contrast, Jones's counsel argued that Jones lacked intent to commit any crime, that he had permission to be in Young's apartment, and that he acted in self-defense. The jury returned guilty verdicts for first degree burglary and second degree intentional assault by reckless infliction of substantial bodily harm (as opposed to intentional assault by strangulation).

## II. POSTTRIAL MOTIONS

At sentencing, Jones had new counsel. Jones signed a stipulation on his prior record and offender score. The trial court entered a standard sentence of 75 months of incarceration for first degree burglary; 20 months of incarceration for second degree assault; and community custody for 18 months or the period of earned release, whichever is longer.

Months later, Jones filed a posttrial motion for a new trial, arguing that prior trial counsel failed to discover evidence and was ineffective. Accompanying this motion, Jones filed (1) a declaration from Young explaining her belief that Jones was "100% innocent, and should have not been convicted," Supp. Clerk's Papers (CP) at 169; (2) a declaration from Young's sister, Marcia Lane, which explained that Jones and Young cohabited, that Jones had a key to Young's apartment, and that he came and went as he pleased with no limitation or restriction; and (3) a declaration from Jones's friend, Joanna Juarez, which explained that Barrows had told her that he hit Jones first. At the hearing in June 2011, Jones argued that trial counsel should have called Young, Lane, and Juarez to testify and that the failure to call them at trial amounted to

ineffective counsel. The trial court denied this motion. Jones appeals his convictions, sentence, and the trial court's order denying Jones a new trial.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Jones first argues that the State engaged in misconduct in closing argument. We conclude that the State did not engage in misconduct and that Jones received a fair trial.

A. Standard of Review

To establish prosecutorial misconduct, Jones must show that (1) the State committed misconduct and (2) the misconduct had prejudicial effect. *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009); *review denied*, 170 Wn.2d 1002 (2010). If the defendant failed to object, he must show that the State's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Thorgerson*, 172 Wn.2d 438, 461, 258 P.3d 43 (2011). This more stringent second standard of review requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *Thorgerson*, 172 Wn.2d at 455). But we judge misconduct by the effect likely to flow from it and focus more on whether an instruction could have cured the State's misconduct. *Emery*, 174 Wn.2d at 762. We inquire whether the misconduct has engendered "a feeling of prejudice" that would prevent a defendant's fair trial. *Emery*, 174 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

6

Here, Jones did not object at trial, request a curative instruction, or move for a mistrial; thus Jones must first show that the prosecutor made improper comments amounting to misconduct, then show that any misconduct was so flagrant and ill intentioned that no instruction could erase the prejudice engendered by it. *Thorgerson*, 172 Wn.2d at 455. We conclude there were no improper comments and no misconduct.

## B. Analysis

The prosecuting attorney represents the people and presumptively acts with impartiality in the interest of justice. *State v. Fisher*, 165 Wn.2d 727, 746, 202 P.3d 937 (2009). Recently, our Supreme Court reiterated that prosecutors have a duty of fairness to the defendant:

> Defendants are among the people the prosecutor represents. The prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated. Thus, a prosecutor must function within boundaries while zealously seeking justice.

*State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011) (citations omitted).

### 1. Comments Vouching for Credibility of a Witness

Jones argues that the prosecutor improperly asserted her personal opinion about Barrows's credibility and told "the truth" to the jury. Br. of Appellant at 20. Jones argues that the prosecutor expressed personal opinions when the prosecutor said that Jones had to "come up with an explanation" for the marks on Barrows's neck as opposed to Barrows who candidly told his story. VRP (Oct. 13, 2010) at 161. We disagree.

The prosecutor may not assert her personal opinion as to the defendant's guilt or a witness's credibility. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006); *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). But a prosecutor enjoys wide latitude in closing

7

argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence. *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006); *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). "'[T]here is a distinction between *the individual opinion of the prosecuting attorney, as an independent fact,* and *an opinion based upon or deduced from the testimony in the case.*'" *McKenzie*, 157 Wn.2d at 53 (quoting *State v. Armstrong*, 37 Wash. 51, 54-55, 79 P. 490 (1905)). To determine whether the prosecutor is expressing a personal opinion of the defendant's guilt, independent of the evidence, we view the challenged comments in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions and look for *"clear and unmistakable"* expressions of personal opinion. *McKenzie*, 157 Wn.2d at 54; *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). Additionally, prosecutorial remarks, even if improper, are not grounds for reversal if invited by defense counsel or if they are a pertinent reply to defense counsel's arguments. *State v. Carver*, 122 Wn. App. 300, 307, 93 P.3d 947 (2004).

The prosecutor's challenged statements all came during closing argument. When read in the context of the prosecutor's entire closing argument, these statements do not appear to be an expression of personal opinion; rather, these comments were based on the evidence presented at trial. The prosecutor references the court's instructions to the jury and the evidence relied on.

Further, two of the challenged comments came in rebuttal and were pertinent replies to defense counsel's explanation of witness credibility and self-defense argument. First, the prosecutor's comment, "Of the two, Mr. Barrows is the one [who] has credibility[;] Mr. Jones

8

has none," was in response to defense counsel's argument on Barrows's credibility. VRP (Oct. 13, 2010) at 181. Jones argued in closing, "[n]ot everything [Barrows] says is absolutely to the letter correct and accurate. Just as the State is saying to you that Mr. Jones'[s] testimony may not be entirely credible, Mr. Barrows'[s] testimony may also have some issues in it and may also have some exaggerations in it." VRP (Oct. 13, 2010) at 171.

Second, the prosecutor's comments that "The door came flying open, Monique[] Young took off for the bathroom and Mr. Jones came in and started beating the crap out of him. That is the most logical explanation. That is the most reasonable explanation and for the simple reason, it's the truth" came in response to defense counsel's explanation of Jones acting in self-defense. VRP (Oct. 13, 2010) at 183-84. These statements were not improper. *Gregory*, 158 Wn.2d 759, 860; *McKenzie*, 157 Wn.2d at 53-54. Jones does not show that the prosecutor made comments vouching for the credibility of a witness.

2. Encouraging Jury to Convict on Facts Not in Evidence

Jones further argues the prosecutor repeatedly asserted that Jones "kicked down the door" to gain entry to Young's apartment even when there was no evidence that he kicked down the door. Br. of Appellant at 22. A prosecutor commits reversible error by urging the jury to decide a case based on evidence outside the record. *State v. Pierce*, 169 Wn. App. 533, 551, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012).

Jones argues there was no evidence to support the prosecutor's argument that Jones kicked down the door. But Barrows testified that the door was kicked, and during the 911 call Young stated that Jones "kicked in" the door. VRP (Oct. 12, 2010) at 44; Ex. 1. There was also

photographic evidence of the damage to the door frame. Jones does not show that the prosecutor encouraged the jury to convict on evidence outside the record.

Jones also argues that the prosecutor improperly told the jury that Jones "had no key" to Young's apartment, because Jones's unrebutted testimony was that he did have a key. Br. of Appellant at 23. But, circumstantial evidence rebutted Jones's testimony. The prosecutor argued that Jones did not have a key because a person with a key does not force their way into an apartment. The prosecutor explained that if Jones had unlocked the door with a key and merely pushed against the door, then the door frame should not have been damaged. There was evidence that the door frame was damaged from the pictures and testimony from Sergeant Carpenter and Barrows. The prosecutor drew a reasonable inference from the evidence that Jones did not have a key. Accordingly, the prosecutor did not argue evidence outside the record.

3. Misstating the Law Regarding the Elements of Burglary

Jones argues that the prosecutor committed misconduct by mischaracterizing the law when it told the jury that the "physical evidence" and Barrows's and Sergeant Carpenter's testimony "dispute[d]" that Jones had a "right to be there." Br. of Appellant at 23. This alleged mischaracterization of the law was emphasized by the prosecutor's PowerPoint slides used during closing argument that showed the damaged apartment door beneath the words "Entered/Remained Unlawfully." Br. of Appellant at 24; CP at 132. Jones asserts the fact that Jones damaged the door when he entered the apartment does not constitute evidence that he entered "unlawfully." Br. of Appellant at 24. Jones is incorrect.

10

The prosecutor properly argued that the State had to prove that Jones entered or remained unlawfully in Young's apartment. The prosecutor then used circumstantial evidence to argue that Jones entered or remained unlawfully. The prosecutor argued that the jury could infer that Jones entered or remained unlawfully in part because he forced his way into the apartment. This is a reasonable inference from the evidence that may be disputed by Jones but it does not constitute a misstatement of the law by the prosecutor. Accordingly, the prosecutor did not commit misconduct.

4. Arguing in Contradiction of the Law in the Jury Instructions

Jones next argues that the prosecutor's closing argument that Jones's entry into the apartment was unlawful because it was forcible exceeds the court's definition of "unlawful" entry as set out in the trial court's instructions. Br. of Appellant at 25.

The court's jury instruction provided:

A person enters or remains unlawfully in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

CP at 61. Jones argues that there was no evidence presented that Jones had no license, invitation, or privilege to enter Young's apartment and that the prosecutor improperly argued that Jones's forcible entry met the court's definition. But, again, the prosecutor argued that the jury could infer that Jones entered or remained unlawfully in part because he forced his way into the apartment. The prosecutor's argument did not exceed the court's definition of "unlawful." Thus, the prosecutor did not commit misconduct.

11

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Jones next argues that he received ineffective assistance of counsel because (1) trial counsel's failure to call Young and Lane to testify fell below an objective standard of reasonableness; (2) trial counsel elicited improper opinion testimony from Sergeant Carpenter that included a clear inference that, in the officer's opinion, Jones was guilty, and then failed to ask the Court to strike the testimony; and (3) trial counsel failed to object when the prosecutor misstated facts and vouched for Barrows's credibility. We conclude that counsel was not ineffective.

### A. Standard of Review

A defendant is guaranteed the right to effective representation by both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A defendant demonstrates ineffective representation by satisfying the two-part standard initially announced in *Strickland*, 466 U.S. at 687, and subsequently adopted in Washington. *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922 (1986). To demonstrate ineffective assistance, the defendant must show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland*, 466 U.S. at 687; *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). The defendant bears the burden of proving both parts, and the failure to establish either part defeats the ineffective assistance claim. *Jeffries*, 105 Wn.2d at 418 (citing *Strickland*, 466 U.S. at 687).

When an ineffective assistance claim is raised on appeal, we may consider only facts within the record. *Grier*, 172 Wn.2d at 29.

First, a defendant must demonstrate that counsel's performance was deficient by showing counsel's performance fell "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). To prevail on an ineffective assistance claim, a defendant alleging ineffective assistance must overcome "'a strong presumption that counsel's performance was reasonable.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We measure reasonableness from counsel's perspective at the time of the alleged error and in the context of all the circumstances. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert denied*, 506 U.S. 856 (1992); *Strickland*, 466 U.S. at 688. That a strategy ultimately proved unsuccessful is "immaterial to an assessment of defense counsel's initial calculus; hindsight has no place in an ineffective assistance analysis." *Grier*, 171 Wn.2d at 43.

Second, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694); *Thomas*, 109 Wn.2d at 226. In assessing prejudice, "'a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law' and must 'exclude the possibility of arbitrariness, whimsy, caprice, 'nullification' and the like.'" *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694-95).

13

Any error by counsel, even if professionally unreasonable, will only warrant setting aside the judgment if the alleged error affected the judgment. *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006). Thus, to set aside the judgment, the defendant must affirmatively prove prejudice by showing the error had an actual, not just a conceivable, effect on the outcome. *Crawford*, 159 Wn.2d at 99.

B. Analysis

1. Failure to Call Witnesses

Jones argues that it was unreasonable for trial counsel to not call Young to testify because Young told trial counsel more than a month before trial that Jones acted in self-defense and that Barrows was the initial aggressor. Jones also argues that it was unreasonable for trial counsel to not call Lane to testify because Lane's testimony "would also have corroborated that of Mr. Jones." Br. of Appellant at 11. We disagree.

Due to the strong presumption of counsel's competence, failure to call a witness will generally not support a claim for ineffective assistance of counsel. *Thomas*, 109 Wn.2d at 230. Counsel's decision to call a witness is presumed to be legitimate trial strategy or tactics. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004). The defendant can overcome this presumption, however, by showing that counsel failed to subpoena a necessary witness. *Davis*, 152 Wn.2d at 742.

Courts have held that counsel's performance was deficient (1) when counsel failed to call witnesses he determined would provide testimony material to the defense, *State v. Weber*, 137 Wn. App. 852, 858, 155 P.3d 947 (2007), *review denied*, 163 Wn.2d 1001 (2008); and (2) when

14

"'counsel failed to conduct appropriate investigations, either factual or legal, to determine what matters of defense were available.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 490, 251 P.3d 884 (2010) (quoting *State v. Jury*, 19 Wn. App. 256, 263, 576 P.2d 1302 (Holding counsel's failure to "adequately acquaint himself with the facts of the case by interviewing witnesses [and] failure to subpoena them . . . were omissions which no reasonably competent counsel would have committed."), *Jury*, 19 Wn. App. at 264, *review denied*, 90 Wn.2d 1006 (1978)). When the failure to call a necessary witness is not a matter of trial strategy, deficient performance is satisfied. *See Jury*, 19 Wn. App. at 265 n.1.

Jones fails to show that Young would have come to trial even if she would have been called by his trial counsel. To the contrary, Young was apparently hiding herself and not responding to the State's subpoena that she appear in court to testify. During pretrial motions, the State explained "there's currently a material witness warrant issued for Ms. Young. It's been out since October 1st. I've requested that law enforcement go to her residence. We have not been able to locate her." VRP (Oct. 11, 2010) at 7. "I believe she is absenting herself, or attempting to avoid process in this case." VRP (Oct. 11, 2010) at 9.

It was not unreasonable for trial counsel to not call Young to testify when a material witness warrant failed to secure her attendance. We hold that it was not deficient performance for Jones's counsel to fail to call Young.

Regarding Lane, first, Jones does not establish that he asked his trial counsel to call Lane or that his trial counsel knew about Lane's potential testimony. Second, Lane filed a declaration nearly four months after the trial regarding the relationship between Young and Jones and that

15

Jones was planning to give Young a ride to work on the day of the incident. Third, Lane was not present at the scene so she could not offer any firsthand knowledge. Fourth, Lane's proposed testimony about what Jones planned to do would have been inadmissible speculation or hearsay. We hold that defense counsel was not deficient for failing to call Lane as a witness.

2. Improper Opinion Testimony

Jones next argues that his defense counsel elicited improper opinion testimony from Sergeant Carpenter on cross-examination by asking how the fight got started when Carpenter was not present during the incident. We disagree.

The general rule is that witnesses are to state facts, and not to express inferences or opinions. *State v. Madison*, 53 Wn. App. 754, 760, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). But even a poor cross-examination will seldom, if ever, amount to a Sixth Amendment violation. *See In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 489, 965 P.2d 593 (1998). The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). On cross-examination, Sergeant Carpenter testified:

> Q: So you don't know how the fight got started?
> A. I know from—based on the evidence and the scene and the story that I was told.
> Q. So that's the only way that you knew how it got started?
> A. The evidence at the scene was consistent with the stories that I received from the victim.
> Q. Do you know who started the fight?
> A. I would imagine the person who came storming through the door.
> Q. But you don't know that for a fact. Is that true?

A. I think that's an aggressive act in itself. I know that must have been the first event that took place because if the door wasn't forced open, the fight couldn't have occurred.

Q. I understand that. But in terms of—you still don't know for certain who started the fight?

A. Well, no, I do. *The person who forced that door open probably started the fight.* I think if I was in my residence and somebody forced their way in, well, they would probably have a stiffer penalty.

VRP (Oct. 12, 2010) at 116-17 (emphasis added). A reasonable defense attorney could believe that this cross-examination was reasonable and necessary because counsel intended to show that Sergeant Carpenter lacked firsthand knowledge of who started the fight. That the tactic may not have been successful is not the test; hindsight has no place in an ineffective assistance claim. *Grier*, 171 Wn.2d at 43.

Accordingly, we conclude that defense counsel's cross-examination was tactical and therefore not deficient and hold that Jones has not demonstrated ineffective assistance during counsel's cross-examination of Sergeant Carpenter.

3. Failure to Object

Jones argues that defense counsel should have objected to the State's repeatedly expressed personal opinion about Barrows's credibility during the State's closing argument. We disagree.

Counsel's decisions regarding whether and when to object "fall firmly within the category of strategic or tactical decisions." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). The failure to object constitutes counsel incompetence justifying reversal only in egregious circumstances on testimony central to the State's case. *Johnston*, 143 Wn. App. at 19. Even if the defendant shows deficient performance, he then must establish prejudice by showing

17

that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Grier*, 171 Wn.2d at 34.

To establish that counsel's failure to object to evidence constituted ineffective assistance, Jones must show that (1) counsel's failure to object fell below prevailing professional norms, (2) the trial court would have sustained the objection if counsel actually had made it, and (3) the result of the trial would have differed if the trial court excluded the evidence. *State v. Sexsmith*, 138 Wn. App. 497, 509, 157 P.3d 901 (2007), *review denied*, 163 Wn.2d 1014 (2008). "The test of the skill and competency of counsel is: After considering the entire record, was the accused afforded a fair trial[?]" *State v. Lei*, 59 Wn.2d 1, 6, 365 P.2d 609 (1961). Jones must show that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). One conceivable legitimate tactic explaining counsel's performance could exist if counsel did not want to risk emphasizing the damaging testimony with an objection. *State v. Donald*, 68 Wn. App. 543, 551, 844 P.2d 447, *review denied*, 121 Wn.2d 1024 (1993).

Jones argues that the prosecutor expressed personal opinions when the State said that Jones had to "come up with" an explanation for the marks on Barrows's neck "[a]s opposed to Mr. Barrows, who candidly told his story. He didn't embellish it. He didn't exaggerate.

. . . Mr. Barrows, he's not here to embellish or exaggerate. He's here to tell you what happened in that apartment on April 1, 2010," VRP (Oct. 13, 2010) at 161. Jones also argues it was

18

improper for the prosecutor to say that Barrows had credibility but Jones had none[2] and to say that

> Obviously, Mr. Barrows told you that wasn't the case. The door came flying open, Monique Young took off for the bathroom and Mr. Jones came in and started beating the crap out of him. That is the most logical explanation. That is the most reasonable explanation and for the simple reason, it's the truth.

VRP (Oct. 13, 2010) at 183-84. Without elaboration, Jones argues that trial counsel's failure to object to these statements constituted ineffective assistance. As noted above, Jones also argues that the failure to object to Sergeant Carpenter's testimony was ineffective assistance.

But we have already examined the prosecutor's comments allegedly vouching for witness's credibility and determined that Jones does not show that the State made improper comments. We hold that it could not have been ineffective assistance to fail to object to the prosecutor's comments that were proper.

Additionally, Jones does not show that there was no conceivable legitimate tactic explaining counsel's failure to object. Counsel could have decided that Sergeant Carpenter's testimony was slight and refrained from drawing attention to it by objecting unnecessarily. *Madison*, 53 Wn. App. at 763. Defense counsel could have come to the same conclusion about the prosecutor's statements in closing argument and did not want to risk emphasizing them with an objection. *Donald*, 68 Wn. App. at 551.

After considering the entire record and Jones's arguments regarding ineffective assistance, we hold that Jones fails to demonstrate ineffective assistance for counsel's cross-examination of Carpenter, for failing to call witnesses, or for failing to object.

---

[2] VRP (Oct. 13, 2010) at 164-65, 181.

### III. Right to Confront Witness

Jones next argues that the trial court committed reversible error when it admitted Young's statements in violation of his confrontation rights because Young's statements to the 911 operator were testimonial. We conclude that the 911 call was nontestimonial and, therefore, the trial court did not violate Jones's confrontation right.

#### A. Standard of Review

We review alleged confrontation clause violations de novo. *State v. Fleming*, 155 Wn. App. 489, 502, 228 P.3d 804 (2010). Under the Sixth Amendment's confrontation clause, an accused has a right to confront witnesses against him. U.S. Const. amend. VI; *see also Crawford v. Washington*, 541 U.S. 36, 42, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The confrontation clause bars the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. Where the police are involved in procuring an unconfronted statement, whether the statement is testimonial depends on the "'primary purpose'" for the interrogation during which the statement was made. *State v. Mason*, 160 Wn.2d 910, 918-19, 162 P.3d 396 (2007) (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)), *cert. denied*, 553 U.S. 1035 (2008); *State v. Reed*, 168 Wn. App. 553, 562, 278 P.3d 203, *review denied*, 290 P.3d 995 (2012).

Where the interrogation is "directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," the product of such an interrogation is necessarily testimonial. *Davis*, 547 U.S. at 826. In contrast, statements are nontestimonial when

made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. Accordingly, "the existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation." *Reed*, 168 Wn. App. at 563 (quoting *Michigan v. Bryant*, 131 S. Ct. 1143, 1157, 179 L. Ed. 2d 93 (2011)).

"[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Bryant*, 131 S. Ct. at 1158. In order to ascertain the police interrogation's primary purpose, a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Bryant*, 131 S. Ct. at 1156. "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant*, 131 S. Ct. at 1156.

Washington courts have applied a four-factor analysis. *Reed*, 168 Wn. App. at 563 (citing *State v. Koslowski*, 166 Wn.2d 409, 418-19, 209 P.3d 479 (2009); *State v. Ohlson*, 162 Wn.2d 1, 11-12, 168 P.3d 1273 (2007)). First, "we examine the timing of the statements relative to when the described events occurred." *Reed*, 168 Wn. App. at 563 (citing *Davis*, 547 U.S. at 827). A speaker's description of events as they are occurring is indicative of an ongoing emergency; while a speaker's description of past events is indicative of a present need for assistance. *Mason*, 160 Wn.2d at 919-20; *Reed*, 168 Wn. App. at 563.

Second, "we assess the nature of what was asked and answered during the interrogation to determine whether the elicited statements were necessary to resolve a present emergency or merely to determine what happened in the past." *Reed*, 168 Wn. App. at 563-64 (citing *Davis*, 547 U.S. at 827). Third, we consider the threat of harm posed by the situation as judged by a "'reasonable listener.'" *Reed*, 168 Wn. App. at 564 (quoting *Davis*, 547 U.S. at 827).

> A plain call for help "against a bona fide physical threat" strongly suggests that the speaker is facing an ongoing emergency. On the other hand, where it is clear that the threat posed by the perpetrator—to either the victim, the police, or the public—has been neutralized, such circumstances tend to indicate that no ongoing emergency exists.

*Reed*, 168 Wn. App. at 564 (citations omitted). Fourth, "we evaluate the level of formality of the interrogation." *Reed*, 168 Wn. App. at 564 (citing *Davis*, 547 U.S. at 827). Disorganized questioning in an exposed, public area that is neither calm nor safe tends to indicate the presence of an ongoing emergency while more formal encounters tend to be testimonial. *Reed*, 168 Wn. App. at 564. In *Davis*, the Supreme Court assumed (without deciding) that 911 operators acted as law enforcement agents during 911 calls. Thus, the operator's inquiries qualified as police interrogations. *Davis*, 547 U.S. at 823 n.2. Washington courts have since applied this four-part test to cases involving 911 calls. *E.g., Reed*, 168 Wn. App. at 561.

### B. Analysis

First, "we examine the timing of the statements relative to when the described events occurred." *Davis*, 547 U.S. at 827. Jones argues there was no ongoing emergency when Young called 911 and that Young was describing events after the fight was over and as Jones was leaving the scene, showing that there was no ongoing emergency. We hold that there was an

ongoing emergency during the 911 call. Barrows testified that the whole event occurred in only a few seconds. So the timing of Young's statements occurring within a few seconds or even minutes of the fight tends to make them contemporaneous with the events described and thus nontestimonial.

Second, "we assess the nature of what was asked and answered during the interrogation to determine whether the elicited statements were necessary to resolve a present emergency or merely to determine what happened in the past." *Reed*, 168 Wn. App. at 563-64 (citing *Davis*, 547 U.S. at 827. Jones argues that the dispatcher's questions tend to show that the interrogation was used to determine what happened in the past. The dispatcher asked questions about Jones's identity, what was going on, and where Jones went in order for responding officers to locate him, which tends to indicate that the elicited statements were nontestimonial. *Davis*, 547 U.S. at 827.

Third, we consider the threat of harm posed by the situation as judged by a "'reasonable listener.'" *Reed*, 168 Wn. App. at 564 (quoting *Davis*, 547 U.S. at 827). Jones argues that a reasonable listener would agree that Young was not under a threat of harm posed by the situation because Young described no threat to herself and was not seeking help against any immediate threat. But Young was under a threat of harm. A reasonable listener can hear Young in a frantic voice yell at Jones, call him "crazy" several times, and yell "oh my f****** god" more than once. Ex. 1. And Young was not the only person under threat of harm. Barrows, the police, and the public were all entitled to protection. Because Jones could have returned, he continued to pose a threat to both Young and Barrows. And, he potentially posed a threat to the police as they responded to the scene or when they attempted to locate him. *Reed*, 168 Wn. App. at 564.

23

Fourth, "we evaluate the level of formality of the interrogation." *Reed*, 168 Wn. App. at 564 (citing *Davis*, 547 U.S. at 827). Jones argues the interrogation was formal whereas the State asserts it was not. The interrogation was the result of a 911 call, indicating that it was not a formal, planned questioning of Young by the police. Additionally Young's voice is frantic and she is nonresponsive at times, also indicating it was informal and unplanned. We hold that the 911 call was nontestimonial and the trial court did not err in admitting it at trial.

## IV. SUFFICIENCY OF THE EVIDENCE

Next, Jones unpersuasively argues there was insufficient evidence to support his conviction of first degree burglary because to prove unlawful entry, the State improperly relied on evidence that Jones's entry was forced.

We review a claim of insufficient evidence to determine "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). An insufficiency claim admits the truth of the State's evidence and all reasonable inferences that can be drawn. *Drum*, 168 Wn.2d at 35. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the evidence's persuasiveness. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated on other grounds by Crawford*, 541 U.S. 36.

To establish that Jones committed first degree burglary, the State had to prove that he intended to commit a crime against a person or property therein, he entered or remained unlawfully in a building and if, in entering or while in the building or in immediate flight

therefrom, he (a) is armed with a deadly weapon, or (b) assaults any person. RCW 9A.52.020. Taken in the light most favorable to the State, there was sufficient evidence to show first degree burglary. The jury made credibility determinations and weighed the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874. The jury was free to believe Barrows's testimony that when Jones arrived, he banged on the door and demanded to be let in before forcing his way in. The jury was free to believe that because Jones forcibly broke the doorframe, he was not licensed, invited, or otherwise privileged to enter. That Young called 911 also supports a reasonable inference that Jones was not invited into her apartment that day. Although Jones testified that he had a key, the jury was free to not believe him. Taken in the light most favorable to the State, the evidence supports a reasonable inference that Jones entered or remained inside the apartment unlawfully. *Thomas*, 150 Wn.2d at 874, *Drum*, 168 Wn.2d 34-35.

V. SENTENCING ISSUES

A. Variable Period of Community Custody

Jones next argues that the trial court sentenced him to a variable range of community custody in violation of RCW 9.94A.701 because the length of his community custody depended on the amount of early release time he earned. Jones is correct because the applicable period of community custody must be 18 months and cannot vary depending on earned early release time. RCW 9.94A.701(2); *State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011).

A court may only impose a sentence if it is authorized by statute. *In re Postsentence Review of Leach*, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). We review the legality of a sentence de novo. *Leach*, 161 Wn.2d at 184. Under RCW 9.94A.701, "a court may no longer

25

sentence an offender to a variable [community custody] term [that is] contingent on the amount of earned release but instead, it must determine the precise length of community custody at the time of sentencing." *Franklin*, 172 Wn.2d at 836. If a sentence is improper, it is remanded for the trial court to amend. *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012), *petition for review filed*, No. 86709-7 (Wash. Feb. 6, 2013). An improper sentence can also be remanded with specific instructions to the trial court to correct offending language. *State v. Land*, No. 67262-2-1, 2013 WL 57900, at *6 (Wash. Ct. App. Jan. 7, 2013).

The applicable community custody statutes have changed in recent years.[3] The second 2010 amendment to RCW 9.94A.701 applies to Jones because it applies to all persons convicted before, on, or after June 10, 2010. RCW 9.94A.701 (LAWS OF 2010, ch. 267 § 15). Jones was convicted on October 13, 2010. The statute provides that the court shall sentence an offender to 18 months of community custody, in addition to the other terms of the sentence, when a person is convicted of a nonserious violent offense. RCW 9.94A.701(2).[4]

Here, Jones was convicted of a nonserious violent offense.[5] The trial court did not sentence Jones to 18 months of community custody. Instead, the trial court sentenced him to 18

---

[3] The trial court here used an outdated judgment and sentence form from July 2007.

[4] Before 2009, trial courts could order variable terms of community custody under former RCW 9.94A.715(2006). *Franklin*, 172 Wn.2d at 835. But in 2009, the legislature removed the language that permitted variable terms and set the requirement that community custody term must be 18 months when the court sentences a person for a violent offense that is not considered a serious violent offense. *Franklin*, 172 Wn.2d at 835-36.

[5] Former RCW 9.94A.030(41), (50)(a)(viii) (LAWS OF 2010, ch. 267 § 9).

months community custody "*or for the period* of earned release awarded pursuant to RCW 9.94A.728(1) and (2), *whichever is longer*." CP at 114 (emphasis added).

Jones is correct that the language "*or for the period* of earned release . . . *whichever is longer*" violates RCW 9.94A.701(2) because it is not a set term of community custody. Br. of Appellant at 37-38 (emphasis added). The State argues that Jones's term is not variable "except as much as it may be reduced by defendant's earned early release." Br. of Resp't at 32.[6] But that the term may change based on Jones's earned early release time is problematic because his term could also be *increased* by Jones's early release. For example, if Jones earned 20 months of early release, then the sentence would provide that Jones serve 20 months community custody because 20 months would be the longer of the 18 months ordered or the period of earned early release. This result is not statutorily authorized.

Accordingly, we remand to the trial court to strike the offending language in Jones's judgment and sentence and to issue a corrected judgment and sentence consistent with RCW 9.94A.701(2).

## B. Offender Score Calculation

In his SAG, Jones argues that the second degree burglary conviction was improperly used to calculate his offender score.[7] According to RCW 9.94A.525(2)(b), a class B felony is counted in an offender score if the offender had not spent 10 years in the community since release from confinement for a felony conviction without committing any crime that results in a conviction.

---

[6] At oral argument, the State acknowledged that it erroneously cited RCW 9.94A.728(2)(a) in its brief. This erroneously cited statute is not pertinent to our analysis.

[7] The State does not respond to the issues Jones raises in his SAG.

In this case, Jones was convicted of second degree burglary, a class B felony, on March 20, 2000. Since that conviction, he has obtained five misdemeanor convictions. The trial court correctly calculated his offender score.

Jones mistakenly relies on *State v. Ervin* to argue that only a felony conviction can interrupt the 10-year time used to calculate the offender score. 169 Wn.2d 815, 826, 239 P.3d 354 (2010). *Ervin* is inapposite because it addresses the effect of probation violations and not misdemeanor convictions. *Ervin*, 169 Wn.2d at 818. Because each of Jones's misdemeanors reset the clock, he did not spend 10 years in the community without being convicted of a crime; thus, the court properly used his burglary conviction when it calculated his offender score.

## VI. REMAINING ARGUMENTS

Also in his SAG, Jones asserts that the trial court improperly allowed evidence of his second degree burglary conviction because the conviction was more than 10 years old. ER 609 provides that evidence that the witness has been convicted of a crime shall be admitted for impeachment if elicited from the witness so long as the conviction is not more than 10 years old. During pretrial motions, the parties discussed Jones's prior convictions. Defense counsel agreed that Jones's second degree burglary conviction was admissible. Defense counsel asked Jones about his conviction on direct examination. Because defense counsel agreed that the conviction was admissible and elicited this information on direct examination, this was invited error and Jones cannot claim error on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996).

Next, Jones asserts the State did not properly authenticate the 911 recording. Jones is incorrect because he stipulated to the authenticity of the 911 recording before its admission at trial. On October 12, 2010, the prosecutor, Jones, and Jones's counsel signed a stipulation that stated, "That a copy of the 911 CD containing a 911 call from Monique⁰ Dolores Young is admissible as a business record under ER 803(a)(6), RCW 5.45.010 and RCW 5.45.020." CP at 49. Jones's stipulated that the 911 call was from Monique Dolores Young, therefore the stipulation properly authenticated the 911 recording for admission at trial.

Also, Jones argues that the trial court abused its discretion in denying his posttrial motion, claiming its decision was based on untenable grounds. We review a trial court's denial of a motion for a new trial for a manifest abuse of discretion and will not reverse absent an abuse of that discretion. *State v. Dawkins*, 71 Wn. App. 902, 906, 863 P.2d 124 (1993). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds. *State v. Partee*, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). Under CrR 7.5(a), the trial court may grant a new trial if substantial justice has not been done. CrR 7.5(a)(8).

Jones argued both ineffective assistance of trial counsel and failure to discover evidence. The trial court denied the motion. Because Jones claimed ineffective assistance of counsel, Jones is required to show that counsel's performance was deficient and that the deficiency prejudiced him. Failure to satisfy either factor defeats his ineffective assistance claim. We have already determined above that Jones did not successfully show ineffective assistance due to counsel's failure to call Young or Lane. For the same reasons, Jones also cannot show

ineffective assistance due to counsel's failure to call Juarez. Thus, Jones does not show the trial court manifestly abused its discretion in denying his motion for a new trial.

Next, in his SAG, Jones asserts a speedy trial violation and a related ineffective assistance claim. Jones states that his case ran "approximat[e]ly 150 days," thereby violating his right to a speedy trial. SAG #1. Although RAP 10.10(c) does not require Jones's SAG to refer to the record or cite authority, he is required to inform us of the "nature and occurrence of alleged errors." There is simply nothing in the record to allow us to review this issue.[8] A simple allegation that it took 150 days to come to trial does not on its face indicate any speedy trial violation. There are many legitimate reasons why a case may take 150 days or more to come to trial. Because this issue may pertain to matters outside the record, and because the issue is not sufficiently framed, we cannot address it on direct appeal. *McFarland*, 127 Wn.2d at 333.

Next, Jones asserts that admission of Dr. Duralde's testimony was error because she did not personally observe Barrows. But the facts or data on "which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." ER 703. There is no requirement that experts base their opinion on personal observation. At trial, Dr. Duralde outlined her qualifications to testify about the effects of strangulation. VRP (Oct. 12, 2010) at 83, 84. She also testified that her opinions were based on the police report and photographs admitted into evidence. Admission of Dr. Duralde's testimony was not error.

Finally, Jones asserts that cumulative errors warrant reversal of his convictions. A defendant's conviction may be reversed when the errors combined effect during trial effectively

---

[8] The only evidence in the record that could explain a delay in the trial is defense counsel's successful request for a continuance because counsel only recently received Dr. Duralde's report.

No. 41638-7-II/
No. 42345-6-II

denied the defendant his right to a fair trial, even if each error standing alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006), *cert. denied*, 551 U.S. 1137 (2007). Because we find no errors, we reject his cumulative error argument.

We affirm and remand to the trial court with specific instructions to strike the offending language in Jones's judgment and sentence and to issue a corrected judgment and sentence consistent with this opinion and RCW 9.94A.701(2).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Wiggins, J.

_____
Bridgewater, J.P.T.

31